JUDGE PRYOR
delivered the opinion oe the court.
James B. Cavens, while in the employ of the Louisville, Cincinnati & Lexington Railroad Company as engineer on a locomotive (freight-engine) drawing trains between Louisville and Lexington, lost his life by reason of the collision of the train he was at the time running as engineer with another freight-train owned by the company and running upon the same track. W. H. Cavens qualified as his administrator, and' as such instituted the present action against the company, alleging that the death of his intestate was caused by the gross and willful neglect of the company by its agents and servants, and asking exemplary damages under the statute authorizing a recovery in such cases. The allegations of the petition were traversed by the company, and a trial had resulting in a verdict for the plaintiff of eight thousand dollars, upon which a judgment was rendered, and the case is now in this court for revision.
The regular freight-train running between Louisville and Lexington at the time Cavens lost his life was under the control of Armstrong, as conductor, and left Lexington on the morning of the day the accident happened for Louisville at 7:15 a.m., and by its time-table was due at Midway at 8:45 A.M., Frankfort 10:27 A.M., Eminence 1:45 p. M., Lagrange 3:20 P.M., and Louisville at 7:35 P. M. This train on that day was behind time, so far as the proof shows, at all the stations after leaving Lexington, and instead of reaching Eminence at 1:45 P.M., did not reach that place until 5:36 p.m., making it behind its time when leaving there near four hours. After it left Eminence, and before reaching Lagrange, and at a point two and a half miles east of the latter town, in attempting to run up an ascending grade, either for the want of steam or on account of the incapacity of the engine, the train failed to ascend, and there remained on the track until it was run into by an extra train, on which the deceased was engineer *562 and Anderson conductor, running in the same direction, resulting in the loss of Cavens’s life and much injury to others.
The train commanded by Anderson was an extra, or what is called by railroad men a wild-train, running by no time-table, but required by the regulations of the road not to interfere with the time of the regular trains. Anderson, the conductor on the wild-train, had received on the evening of the day this accident happened a dispatch at Midway Station from the train-dispatcher at Louisville, containing the following order:

“To Anderson, Midway Station:

“Follow flag No. 12 from Midway to Lagrange. Make as fast time as is safe. Look out for Dodson, at work under a flag between Frankfort and Bagdad.
J. E. R., Train-dispatoher.”
This order was obeyed by Anderson by following flag No. 12 on the evening passenger-train that left Lexington for Louisville; this flag was placed on the passenger-train in order to notify all other trains it met or passed on the road that there was a train following after. There were telegraph-stations at Frankfort, Bagdad, Eminence, and Lagrange, and although this morning freight-train, bound for Louisville under the control of Armstrong as conductor, was behind time at Frankfort, Bagdad, and Eminence, and. had not.reached Lagrange when due at that place by its regular time-table five hours prior to the accident, and these delays all known at the office of the train-dispatcher at Louisville, as well as the fact that this wild-train ivas then on its way to Lagrange under orders to run as fast as was safe, no information by telegraph or otherwise was given Anderson, the conductor, in order that he might avoid the impending danger. The telegraph-agents both at Eminence and Lagrange had notified the train-dispatcher of these delays on the part of Armstrong’s train.
It is urged by counsel for the appellant, based upon the *563 testimony of the train-dispatcher, that it was not the duty of the latter to notify Anderson of his danger. It is immaterial, in our opinion, whether the train-dispatcher was required to give the information or not. If no such rule or regulation had been adopted by the company, with telegraph-offices at nearly every station on the road, it evidences such a disregard for the safety of its employees, as well as those traveling upon its trains, as renders it inexcusable negligence. The evidence of the train-dispatcher, however, makes it clearly his duty to have given Anderson notice of the delay of Armstrong’s train. He says that among the duties of a train-dispatcher “ are those requiring him to give train-orders, running-orders to wild and extra trains and others that have no schedule time, and to give orders to delayed trains, arranging for meeting-points as he thinks best.” If these are the duties imposed by reason of his position, it is certainly incumbent upon him, when cognizant of the facts, to warn conductors when there is danger of colliding with other trains, or when by the exercise of even the slightest care and caution he ought to know that such danger exists.
It is not pretended that this train of Anderson’s was encroaching upon the time of any other train, and certainly not of the train under Armstrong, as they were both running .in the same direction, and when the accident occurred Armstrong’s train was five hours behind time. It is also insisted by the company, based upon the same testimony, that the only means Anderson had of knowing that Armstrong’s train was in his way was by seeing it upon the track, or by the signals given, or by making inquiry of persons at the various stations. If this inquiry had been made by Anderson at either Frankfort, Bagdad, or Eminence, the response would have been that Armstrong’s train was at least an hour in advance of him, as such was the case, and he would have felt entirely secure in making the speed required of him by the order; hence the *564 necessity of communicating to Anderson the facts so essential to the safety of his train and those upon it, and the discharge of so plain a duty would have saved the life of the unfortunate engineer.
It was also Armstrong’s duty to have given the proper signals by placing torpedoes on the track, and also red lights, in order that the coming train might be advised of danger. This he recklessly failed to do, and the weight of the testimony conduces strongly to show that although he had been endeavoring to make his way up this ascending grade with his train for about one half hour, still during this whole time no precautions were used to warn Anderson of the danger until his train was heard coming, and before Armstrong could get from the front to the rear end of the train, having thirty cars attached to his engine, Anderson’s train was too near for any signal to have prevented the unfortunate occurrence.
It also appears that the engine belonging to Armstrong’s train was defective, and had been in such condition for a long time, and, although attempting to pull thirty heavily-laden cars up this ascending grade, had only the capacity to pull twenty-two.
After a careful consideration of all the testimony in the case, we are well satisfied that the death of appellee’s intestate was caused by the reckless and willful negligence of the agents of the company and those in its employ. We shall not allude to the question of the alleged contributory negligence on the part of Anderson or those under him farther than to say that, in our opinion, there is an entire absence of proof showing that they contributed to bring about the injury complained of.
It is insisted by counsel for the company that as the employees in this ease were in the discharge of a common service, and occupying a like position, by which each was enabled to exercise the same rights and powers, that as between each other they were not the agents of the company, and therefore *565 it is not liable for injuries to tbe one resulting from the negligence by the other while in the discharge of this service. While the legal proposition thus presented has been argued with much force, still we can not perceive how the principle can be made applicable to the facts of this case.
It is well settled that where one enters into the service of another he assumes to run all the ordinary risks pertaining to such service; and this means only that he can not recover for any injury that his employer, by the exercise of ordinary care and prudence, could not provide against. And it is equally as well established that where a number of persons contract to perform service for another, the employees not being superior or subordinate the one to the other in its performance, and one receives an injury by the neglect of another in the discharge of this duty, they are regarded as substantially the agents of each other, and no recovery can be had against the employer. A different rule, however, prevails where the employment is several, and where one is subordinate to the other, or occupies such a position in the service with reference to his co-laborer as precludes him from having any control over his actions, or the right to advise even as to the manner in which the service or labor is to be performed. Public policy requires that where the laborers are co-equals, and engaged in laboring in the same field or on the same railroad-train or in any other employment, that each should exercise proper care in the conduct of the business, and look to it that his co-laborer does the same thing; and when he is told that this care and prudence is his only remedy against danger from the negligence of those employed with him, it not only makes him the more careful, but stimulates him to see that others exercise the same caution.
This was the reasoning of the court in the cases of Murray v. Railroad Co. (1 McMullen, S. C., 235), Farwell v. Boston & Worcester R. R. Co. (4 Met., Mass., 49), and in many other American as well as English cases. The rule was carried so *566 far in some of these cases, and particularly in the case of Murray v. Railroad Co., as to deny the right to recover, notwithstanding the party injured was a mere subordinate in the service to those causing the injury.
This extension of the rule was discarded by this court in the case .of the Louisville & Nashville R. R. Co. v. Collins (2 Duvall, 117), “as inconsistent with principle, analogy, and public policy,” and the rule established that a subordináte in the same service could recover for the negligence of the agents who had the right and power to control and direct him, or who were his superiors with reference to the discharge of the duties pertaining to the work. The law will not imply, as was argued in that case, that the subordinate undertook upon entering the service to look alone to another employee, whom he had no authority to control or resist in any wa.y, for damages resulting from the neglect of such employee while in the discharge of his duties.
The important question in the present case is, can the company be made liable for the negligent conduct of Armstrong or those upon his train ? The maxim respondeat superior certainly applies to the negligence of the train - dispatcher, as he had the control of all the officers on both trains; but as the negligence of Armstrong was considered by the jury upon the instructions given, it becomes necessary to determine the liability of the company for his acts. We do not understand that appellee’s intestate is seeking to recover for the negligence of the engineer on Armstrong’s train, but for the negligence of Armstrong himself. The latter had the sole power as between himself and his engineer to control the movements of the train. Upon his ordering it to move off or stop, it became at once the duty of the engineer to obey, and to this extent at least the engineer was a subordinate employee. It was also the duty of Armstrong, the conductor, and not that of the engineer, to place signals upon the track, or have it *567 done, in order to avoid the danger, and to give such signals as in his judgment were necessary for the safety of the trains. No one on the train had the right or power to control or resist his action in this regard. Can it then be maintained that, as the decedent was an engineer upon one train and lost his life by reason of the negligence of a conductor on another train, that his personal representative can not recover for the reason that there was. an engineer on the train controlled by the conductor whose negligence caused the misfortune, or because the officers of both trains were all clothed with similar powers? Such a ruling, in our opinion, would not only be contrary to public policy, but inconsistent with principle and authority. Assuming, however, that there is no distinction between the offices of conductor and engineer, and that appellee’s intestate and Armstrong were performing the same duties for the company, but upon different trains, still the company is liable for this willful neglect of Armstrong.
Appellee’s intestate undertook to serve the company on the train of Anderson, or to act as engineer upon such trains as might be required by the company. He was placed where he had no power to control, advise with, or resist the acts of Armstrong, and was unable to know what orders had been given the latter as to the movements of his train, or the skill and prudence with which these orders were obeyed; he had no voice in his employment, or the right to determine his skill and judgment in its exercise. Is it not more reasonable to make the company, whose duty it is to employ careful and skilled agents for the conduct of its business, and when it alone controls such agents, liable for this neglect of duty, than to adjudge that a mere subordinate who has no means of knowing the qualification of the agent for such a position or voice in his selection as such, and without the means or power to resist or control his action, is without remedy, except as against the party committing the negligent act? If Cavens *568 had been on the same train with Armstrong, and in a condition, by reason of his equality with him as an employee, to watch over and provide against his negligence, the reasons then for refusing to make the company liable would apply; but when on different trains, and with no opportunity to exercise this watchful care over each other, the reason for releasing the company from responsibility ceases to exist, and in such cases those controlling and directing the movements of one train with reference to those upon another and different train must be regarded as the agents of the company. The wisdom and justice of this rule are plainly demonstrated by the facts of the case before us. (Louisville & Nashville Railroad Company v. Collins, 2 Duvall, 114; Louisville & Nashville Railroad Company v. Robinson, 4 Bush, 507; Louisville, Cincinnati & Lexington Railroad Company v. Mahony’s adm’r, 7 Bush, 235; Cleveland, Columbus & Cincinnati Railroad Company v. Keary, 3 Ohio State Reports, 201; Little Miami Railroad Company v. Stevens, 20 Ohio, 415; Cooper v. Mullins, 30 Georgia, 115.)
The appellant was not prejudiced by the refusal of the court to send the phonographic report of Brown’s testimony to the jury-room, and ought not to have permitted it without the consent of counsel or the parties litigant.
The instructions of the court below being in accordance with the principles herein recognized, the judgment of that court must be affirmed.