CASE 61—ACTION FOR NEGLIGENCE CAUSING DEATH—
JANUARY 27.

105  479|
o107  375|
‾105  479
110  731‗

# Edmonson v. Kentucky Central Railway Co.

### APPEAL FROM HARRISON CIRCUIT COURT.

1. NEGLIGENCE—FELLOW-SERVANTS—CONDUCTOR AND ENGINEER.—The engineer is a fellow-servant of the conductor, and the widow of the latter can not recover against their common employer on account of the former's negligence for an injury causing death.

2. SAME—DEFECTIVE BRAKE—PROXIMATE CAUSE.—No recovery can be had in an action for negligence causing death on account of a defective brake in the absence of proof showing that such defective brake contributed to the injury.

3. APPEALS—DEPOSITIONS NOT COPIED.—In the absence of the depositions from the transcript this court can not assume that the evidence contained in them is different from that contained in the bill of evidence.

CHARLES M. F. STRIGER AND TISDALE & GRAY FOR THE APPELLANT.

1. The court erred in granting the defendant's motion for the peremptory instruction. Stevens v. Brooks, 2 Bush., 140; Shay v. R. R. & L. T. R. Co., 1 Bush, 109; Buford v. L. & N. R. R. Co., 82 Ky., 286; Eskridge's Exrs., v. C., N. O. & T. P. R. R. Co., 89 Ky., 372; Judd's Admrx. v. C. & O. Ry. Co., 18 Ky. Law Rep., 747; L. & N. R. R. Co. v. Copas, 95 Ky., 460.

Same counsel in a supplemental brief, cited Ballard v. L. & N. R. R. Co., 19 Ky. Law Rep., 785; Wilsey v. L. & N. R. R. Co., 7 Ky. Law Rep., 500; Owensboro City Railroad Co. v. Lyddane, 19 Ky. Law Rep., 699.

(No brief on file for the appellee on the original hearing.)

EDWARD W. HINES FOR THE APPELLEE IN A PETITION FOR REHEARING. (BLANTON & BERRY, OF COUNSEL).

1. The conductor and engineer were fellow-servants of the same grade and in the same department of service, and therefore there can be no recovery for the death of the conductor if it resulted from the neglect of the engineer. Volz v. Chesapeake, &c., Ry. Co., 95 Ky., 188.

2. It is necessary to allege in the petition that the injured servant was ignorant of the defect in the machinery which is alleged to have caused the injury. Bogenschutz v. Smith, 84 Ky., 330, Mellott v. Louisville & Nashville R. R. Co., 19 Ky. Law Rep., 379; Judd' Admr. v. Chesapeake, &c., Ry. Co., 18 Ky. Law Rep.. 747.

3. The conductor's duties are such that he is conclusively presumed to know what character of brake the engine of his train was provided with. Alexander v. L. & N. R. R. Co., 83 Ky., 589.

4. There is a fatal variance between the pleading and proof in that it is alleged that the engine had no brake, whereas the proof is that it had a brake though not of the most improved kind.

5. The excluded depositions not being in the record it can not be said their exclusion was prejudicial.

TISDALE & GRAY AND CHARLES M. F. STRIGER, FOR THE APPELLANT IN RESPONSE.

Upon the petition for a rehearing, the original opinion was withdrawn and the following opinion affirming the case was delivered by Judge DuRelle; Judge Guffy dissenting.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The appellant brought suit as the widow of John C. Edmonson, under section 3, c. 57, General Statutes, for damages for the death of her husband, alleging that he was in the employment of appellee as conductor of a freight train, and while so employed for hire and reward lost his life by the willful neglect and gross carelessness of appellee, its servants, agents, and employes, in this: "That a locomotive engine and tender of said company was, by the willful neglect and gross carelessness of the persons in charge thereof, run over said John C. Edmonson, thereby injuring him to such an extent that he presently thereafter died from and on account of said injuries so inflicted; and, further, by the willful neglect and gross carelessness of the defendant, its agents, servants, and employes, said locomotive engine was, at the time it ran over and killed said Edmonson, operated and run without having any brake wherewith to check or stop same. That said Edmonson lost his life, in.

the manner above stated, while in' the discharge of his duties as a freight conductor upon the railway track of defendant, in Cynthiana, Harrison county, Kentucky, on the 19th day of October, 1890."

A demurrer to the petition was sustained, and the judgment reversed [28 S. W., 789], on appeal to this court. It is claimed that the ground upon which the demurrer was sustained by the trial court was that section 3 of chapter 57 had been repealed by section 241 of the new Constitution, and that this question was the only one considered by this court in reversing the judgment. The opinion of Judge Quigley seems to bear out this view; but, be that as it may, the sufficiency of the petition was there called in question, decided in the affirmative, and that is the law of this case.

Certain amendments were offered, averring the plaintiff's appointment and qualification as administratrix; but, as it was held that the suit might be brought by her as widow, this was not error to her prejudice.

Appellee's answer denied the averments of negligence, and averred that "Edmonson was the chief officer or agent of said company in charge of said train at the time he was killed," and this averment is undenied.

At the conclusion of appellant's testimony, appellee moved for a peremptory instruction to find for the defense, and pending that motion appellant offered to file an amended petition, which motion was overruled and a peremptory instruction given to find for appellee. The amendment offered alleged "that the roadbed of the defendant at the point of the killing of decedent, John C. Edmonson, was defective, and out of order, and the ballast removed from between the ties; that the frog at said point where he was killed was not block-

ed or stopped by having a wedge of wood or iron placed therein." This pleading seems to have been offered as an amendment to conform to the proof. But, assuming that the evidence supported the averments made, the motion to file was properly overruled, as the pleadings in no wise connect the alleged defects of the roadbed and frog with the death of appellant's husband. From the testimony it appears that the injury occurred a short time before daylight; that the night was rainy, necessitating the use of lanterns; that at Cynthiana the engine was cut off from the train, and backed on a side track, where three cars were coupled to it and shoved out on the main track, the car next to the engine being intended to go back on the side track. By mistake, all three of the cars were cut off from the engine, after being coupled to the train on the main track. Edmonson sent his head brakeman to cut off the car which was to be side-tracked from the other two cars, while he himself made the coupling to the engine of the car which was to be put back on the side track. The signal was given to the fireman, and by him to the engineer, to back, in order to make the coupling, the engine being about fifteen feet away from the car. It was, however, backed so swiftly as to move the train, consisting of twenty-five loaded cars, the length of a car. Edmonson, who stood upon the fireman's side of the train to make the coupling, was run over and killed.

The claim to recovery, it will be observed, is based upon two propositions: First, the negligence of the engineer; and, second, negligence of the company in furnishing an engine without a brake. There was evidence introduced tending to show that the frog at the point where Edmonson was killed was not in order, and the roadbed was defective; but there was no averment made, nor offered to be

made, in the pleadings, that any such defect contributed in any degree to Edmonson's death, and the evidence on this subject was, therefore, properly excluded.

Negligence on the part of the engineer was quite well established by the evidence, it being shown that the engine was backed at a rate of speed much higher than was proper when making a coupling. But it was averred, and not denied, that the conductor was the chief officer in charge of the train at the time he was killed. Whether this was true or not, the engineer was his fellow servant, and certainly no higher in grade or authority than the conductor. In L., C. & L. R. R. Co. v. Cavens' Adm'r, 9 Bush, 565, it was said: "And it is equally as well established that when a number of persons contract to perform service for another, the employes not being superior or subordinate the one to the other in its performance, and one receives an injury by the neglect of another in the discharge of this duty, they are regarded as substantially the agents of each other, and no recovery can be had against the employer."

This doctrine that, where two servants are in the same field of labor, and the same grade of employment, the one not superior or subordinate to the other, neither can recover from the master for an injury caused by the neglect of his fellow servant, applies as well to an action under the statute for willful neglect as to a common-law action for neglect. Said Judge Pryor, delivering the opinion of this court in Casey's Adm'r v. L. & N. R. R. Co., 84 Ky., 84: "The statute giving a remedy for the loss of life caused by the willful neglect of another is but enlarging the common-law rule, or providing a remedy unknown to the common law; but at the same time the doctrine of the text-books as to the liability of the employer for the acts of those in his employment, except as to the

degrees of negligence, must prevail. To say that, if the injury was caused by one in the employ of another in the exercise of that employment, the employer is liable, regardless of the relation the wrongdoer and the injured party sustained toward each other at the time, is not the meaning or the purpose of the statute. The statute only gives a remedy for negligence causing the death of another that heretofore could not be maintained."

This doctrine was followed in an opinion by Judge Lewis in Fort Hill Stone Co. v. Orm's Admr., 84 Ky., 183. And in a very carefully considered opinion by Judge Hazelrigg in Volz v. Chesapeake Railroad Co., 95 Ky., 188, [24 S. W., 119], the same doctrine was applied to a case of gross negligence occurring since the adoption of the new Constitution. The question of whether the conductor and engineer employed upon the same train are co-equal fellow-servants within the meaning of the doctrine thus laid down has not, we believe, been directly decided in this State. We find, however, a very clear intimation that such is the law in the Cavens Case, *supra*. In that case there was evidence tending to show that Cavens, the engineer of one train, was killed by the negligence of Armstrong, the conductor of another train; and Judge Pryor, delivering the opinion of the court, used this language: "If Cavens had been on the same train with Armstrong, and in a condition, by reason of his equality with him as an employe, to watch over and provide against his negligence, the reasons then for refusing to make the company liable would apply; but when on different trains, and with no opportunity to exercise this watchful care over each other, the reason for releasing the company from responsibility ceases to exist, and in such cases those controlling and directing the movements of one train

with reference to those upon another and different train must be regarded as the agents of the company." This language was quoted with approval by Judge Lewis in K. C. Railroad Co. v. Ackley, 87 Ky., 282, [12 Am. St. R.. 480; 8 S. W., 692].

It seems to us there can be little doubt upon this question. They are both employed in the same field of labor, and for the common purpose of operating the train. They must agree as to the movement of the train. They receive the same orders from the train dispatcher, and each is required to, compare the order received by him with that received by the other. If this does not constitute them co-equal fellow servants in the same field of labor, it is difficult to imagine what would. That there is a dearth of authority in other States upon this exact point is not surprising when it is considered that in most of the States *all* the trainmen engaged in the operation of the train are held to be fellow-servants and agents of each other in the management of the train. See 3 Elliott on Railroads, section 1330, and note.

Upon the issue of negligence in furnishing an engine without a brake it appeared that, while the engine had no air or steam brake, it was furnished with a tank brake, operated by hand. But we may assume that the averment that the engine had no brake "wherewith to check or stop same" was intended as an averment that it had no sufficient brake. There was evidence to the effect that the tank or hand brake was not as efficient as an air or steam brake, but there was not a syllable of testimony to show that Edmonson's death was caused by any defect in, or inadequacy of, the brake. On the contrary, no effort whatever was made to use the brake with which the engine was furnished. The overwhelming weight of

the testimony is that Edmonson's death was caused by the negligence of his fellow servant in backing the engine at an improper rate of speed.

We can not assume that the exclusion of certain of plaintiff's depositions was prejudicial error, for the depositions have not been brought here; and we can not presume that the statements contained in them were different, or more favorable to appellant, than those made by the witnesses upon the stand.

For the reasons stated, the rehearing is granted, and the judgment is affirmed. The whole court sitting.

JUDGE GUFFY DISSENTS FROM THIS OPINION.

The petition in this case charges willful negligence upon the part of appellee, the Kentucky Central Railway Comany, by which John C. Edmonson, a conductor on appellee's freight train, lost his life. A demurrer was sustained to the petition, and, upon an appeal by appellant to this court, the judgment of the court below was reversed, and remanded for a new trial. At the close of appellant's testimony the court, upon motion of appellee, instructed the jury peremptorily to find for the defendant, which was accordingly done, and from that judgment appellant again appealed to this court, which judgment was reversed; but, upon petition for rehearing, the judgment of reversal was withdrawn, and the judgment appealed from affirmed by the majority opinion. [49 S. W., 200].

am not able to concur in the opinion affirming the case, and, deeming the question of vital importance to the appellant, as well as the public at large, I feel it my duty to file this, my dissenting opinion.

It seems to me that the majority opinion proceeds upon the idea that the suit was to recover for mere negligence or carelessness, when in fact the suit is based upon section

Edmonson v. Kentucky Central Railway Co.

3 of chapter 57 of the General Statutes (the injury having occurred in 1890), which reads as follows: "If the life of any person or persons is lost or destroyed by the willful neglect of any persons or persons, company or companies, corporation or corporations, their agents or servants; then the widow, heir, or personal representative of the deceased shall have the right to sue such person or persons, company or companies, corporation or corporations, and recover punitive damages for the loss or destruction of the life aforesaid." It will be seen from the first section of chapter 57 that a right to recover for the death caused by the negligence or carelessness of the proprietors, servants, or agents of a railroad company was given in behaf of all persons not in the employment of such railroad company. But section 3 gives the right to recover for the death of any person caused by the willful neglect of any other person, corporation, etc. The sufficiency of the petition was determined in favor of appellant upon the first appeal; hence no question as to the sufficiency of the petition is involved in the consideration of this appeal.

It is said in the majority opinion, "that negligence upon the part of the engineer was quite well established by the evidence," and I will add that the question of willful negligence was sufficiently established to authorize the submission of that question to the jury. But the majority opinion seems to proceed upon the idea that inasmuch as the decedent was the conductor on the freight train, and, if not the chief officer, was the fellow-servant of the engineer, through whose negligence, it seems, the accident occurred, therefore, as a matter of law, appellant can not recover in this action; and in the opinion several authorities are cited in support thereof.

In the first place, however, it seems to me that any deci-sion denying the right of recovery, based upon the fellow-servant doctrine, is in direct conflict with the statute, and such decisions, if any, should not be adhered to. L. C. & L. Railroad Co. v. Cavens' Adm'r, 9 Bush, 565, is cited in the majority opinion. A careful reading of that case will show that the question involved in the case at bar was not before the court; and, while it is true that the court announced a rule of law applicable under the com-mon law in regard to personal injuries, it was not really involved in the case under consideration, and at most was merely obiter; and, besides, the court affirmed a judg-ment for $8,000 in favor of Cavens' administrators.

Casey's Adm'r v. L. & N. Railroad Co., 84 Ky., 80, is also cited. A careful reading of the facts as stated in that opin-ion does not, as I think, sustain the majority opinion in the case at bar; and it is worthy of note, too, that in that case the lower court set aside the verdict rendered in favor of the plaintiff, where the verdict of the jury showed that the deceased was a laborer in the employment of the rail-road company, and that he was killed by the negligence of two of its brakemen, and this court reversed that judgment.

Volz v. Chesapeake, &c. Railroad Co., 95 Ky., 188, [24 S. W., 119], is also referred to in the majority opinion. The in-jury complained of there occurred since the adoption of the new Constitution, and the statute passed in pursuance thereof, and, while the same principle may be announced as is in the majority opinion, the facts in that case are not applicable to the case at bar; and besides, in my opinion, the doctrine announced in Volz v. Chesapeake, &c., Railroad Co. is in conflict with the plain provisions of the Constitution and stat-ute, and is inconsistent with the case of L. & N. Rail-

Edmonson v. Kentucky Central Railway Co.

road Co. v. Eakins' Adm'r, [45 S. W., 529], which holds—
and from which I dissented [46 S. W., 496]—that the
only damage recoverable, under the provisions of the
new Constitution, is damage to the estate of the decedent, and the criterion of recovery is the power of the
deceased to earn money. If the intent was to apply the
rule of the common law to injuries resulting in death,
then the damages which a party is entitled to recover
would necessarily include the loss of society of decedent, and the mental suffering caused by his death.

If, however, the doctrine that a fellow servant can not
recover for the willful neglect of a servant in the same
employment is sound law, still the majority opinion in
this case is, in my opinion, erroneous. In the first place,
the doctrine of fellow servants in reality means servants
engaged in the same kind of business, and in which each
one has a reasonable opportunity to notice the actions of
the other, and, in a reasonable degree, to guard against
injuries resulting therefrom. In the case at bar the
proof shows that it was the duty, in part, of the deceased
conductor to assist in the coupling of cars; and even if
he was according to the rules of the company, an officer
superior in grade or authority to the engineer, still he
was in no sense a fellow servant of the engineer, and
could not by any sort of care or diligence prevent the
engineer from being guilty of either gross or willful negligence, or in fact in any way control the management
of the engine, and had no chance to know of the negligence, and no chance to avoid its dire results. The engineer was in fact supreme as to the management of the
engine, and no power at the time could exert any control
over such management or movement as he saw fit to make.
nor guard against the same.

It seems to me that, as a matter of law and fact, the doctrine of agency or fellow servants has in fact no application to the management or actions of a corporation. A corporation is a creature of statute law. It is in one sense entirely invisible, as much so as the human mind, will, or spirit. It acts through natural persons, because it can not act otherwise, or, rather, it selects natural persons, who constitute part and parcel of its own power for the time being to act and to do; or as before said, the invisible power called the "corporation" has neither flesh nor form that can be seen. A natural person acts through his different members. A corporation acts through certain persons, that we call "agents" or "servants." But, as to such persons as are authorized to act at all, the act performed by them in connection with the business of the corporation is in law and in fact the act of the corporation; and I can see no reason why a corporation should not be required to use as much care to protect the individual from injury who is for the time being a part and parcel of the corporation, as to protect a person having no connection with it.

The same reason for applying the doctrine of fellow-servants to agents or servants employed by natural persons to do or to perform certain labor does not apply to a corporation, for the reason, in part that fellow-servants generally understand and are familiar with the entire scope of employment in which all their fellow-servants are engaged, and to a very great extent are sent out without the presence of their employer or master, and, as a rule, without any special superior officer or manager; and to these facts alone are attributable the origin of the doctrine that fellow-servants can not recover against the master for the negligence of each other. But

it is entirely different as to the management of railroads and most other corporations, and besides, it must be presumed that the framers of the Constitution knew what they desired to provide for, and also were likewise aware of the former doctrine as to fellow-servants.

We find that section 241 of the Constitution provides that "whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. . . ."

If it had been the intention of the framers of the Constitution to apply the fellow-servant rule to such recovery, it does seem that they would have said so, but the evident intention was to include all cases; and, as evidence thereof, the framers of the Constitution were particular to use the words "in every such case," which I concede is a little stronger expression than section 3, c. 57, General Statutes heretofore referred to. But, inasmuch as the majority opinion in the case at bar cites the case of Volz v. Chesapeake Railroad Co. in suport of the opinion, I have thought it proper to discuss that provision of the Constitution.

It is well known that the evolution, growth, and protection of individual rights has been one of the developments attending the progress of our higher civilization, and a greater respect for humanity, and incidentally less reverential awe 'of caste, wealth, or power; and many restrictions imposed by the so-called common law have given way to the progress of civilization and recognition of human rights, as evidenced by constitutional and statutory enactments.

It has been scarcely two centuries since courts and

people of the most enlightened and civilized nations held to the doctrine that a citizen should be punished for practicing witchcraft.

Within less than half a century the Supreme Court of the most enlightened and freest country on earth held, in substance that a race of many millions of people, inhabiting the same country, had no right that the other race was bound to respect. But happily the enlightenment and civilization of the age has condemned and departed from such ideas and ruling; and it seems to me that the time has now arrived that no corporation or other person should be allowed with impunity to destroy the life of any other citizen, either through ordinary or gross negligence. In my opinion, the 140,000 majority given for the adoption of the present Constitution was mainly the result of the conviction upon the part of the people that the Constitution guaranteed to the citizen the protection and benefits of a higher civilization, and a greater respect for individual rights.

For the reasons indicated, as well as others that might be mentioned, I earnestly and respectfully dissent from the majority opinion in this case.