[Civil No. 797.    Filed March 20, 1903.]

[71 Pac. 957.]

## GILA VALLEY, GLOBE, AND NORTHERN RAILROAD COMPANY, Defendant and Appellant, v. A. J. LYON, Plaintiff and Appellee.

1. RAILROADS—NEGLIGENCE—QUESTION FOR THE JURY.—Defendant maintained a siding on a trestle, on an up grade, and at the end thereof there was no sufficient obstruction placed to prevent cars running off into a deep ravine. Defendant's freight conductor, in setting out cars on this siding, instead of employing the proper and customary method, which consisted in keeping the locomotive attached until the cars were stopped, allowed them to run on the trestle by their momentum, and it being impossible to stop them by the hand-brakes, one of the cars went over the end of the trestle, killing the brakeman who was riding thereon. *Held,* that whether the premises were reasonably safe, and, if not, whether the negligence

of the railroad contributed to the injury, were questions for the jury.

2. SAME—SAME—INSTRUCTIONS TO THE JURY.—Where it appeared that the uniform custom of setting out cars on a siding was to do so with the engine attached, and that the conductor had knowledge thereof, it was error to instruct that it was for the jury to determine whether the railroad was negligent in failing to instruct its employees to set out the cars with the engine attached, and whether it was negligence not to have warned them not to set them out by allowing the cars to run into the siding by their momentum.

3. SAME—ACTION FOR WRONGFUL DEATH—PROXIMATE CAUSE—FELLOW-SERVANT—INSTRUCTIONS TO JURY.—In an action against a railroad company for wrongful death of a brakeman, the court, at the request of plaintiff, charged that if the death was caused by the negligence of the conductor, and the negligence of the defendant did not contribute to it, the jury should find for the defendant; but that if the conductor was negligent, and defendant also, and defendant's negligence contributed to the injuries, plaintiff could recover. · In the main charge the court did not discuss the question of proximate cause nor was the question presented to the jury whether, if such negligence of the conductor, who it is admitted was the fellow-servant of the deceased, was the direct or proximate cause, the defendant could still be held liable if in any way at fault. A subsequent instruction was to the effect that if the negligence of the conductor was the proximate cause of the accident, and was not coupled with any negligence on defendant's part, plaintiff could not recover. *Held*, that these instructions were erroneous, since the jury were justified in believing that, though the negligence of the fellow-servant was the proximate cause, they might find for the plaintiff if defendant was negligent in any respect, whether such negligence contributed to the injury or not.

4. SAME—SAME—SAME—SAME—QUESTION FOR JURY—ARIZONA LUMBER AND TIMBER CO. V. MOONEY, 4 ARIZ. 366, 42 PAC. 952, CITED.—When the proximate cause of an injury is the negligence of a competent fellow-servant, no recovery can be had, even though the place or appliances are defective, and the master is negligent in that respect; and whether the negligence of the fellow-servant was the proximate cause or whether the defendant's negligence was a contributory cause is ordinarily a question for the jury.

5. SAME—SAME—INCOMPETENCY—INSTRUCTIONS TO JURY.—In an action for wrongful death of a brakeman, there being no allegation of incompetency or evidence thereof, or that the company had notice of any incompetency, or could have had by the exercise of reasonable diligence, it was error for the court to instruct that if the injury was proximately caused by the conductor of the train without previous notice to the defendant of his incompetency, plaintiff could not recover.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Gila. George R. Davis, Judge.    Reversed.

The facts are stated in the opinion.

Frank W. Burnett, for Appellant.

The master's duty to furnish a reasonably safe place for his employees to work in is fully performed when the appliances furnished are reasonably safe when used with ordinary skill and care; and no liability exists if under such circumstances an injury results from an improper use of the appliances by plaintiff or his fellow-servants. *Randall* v. *Baltimore etc. R. R. Co.,* 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003; *Morris* v. *Duluth S. S. Co.,* 108 Fed. 749, 47 C. C. A. 661; *Trewatha* v. *Buchanan etc., Min. Co.,* 96 Cal. 494, 28 Pac. 571, 31 Pac. 561; *Kansas etc. Coal Co.* v. *Reid,* 85 Fed. 915, 29 C. C. A. 475; *Cincinnati etc. Ry. Co.* v. *Mealer,* 50 Fed. 727, 1 C. C. A. 633; *Jones* v. *Granite Mills,* 126 Mass. 84, 30 Am. Rep. 661; *Hussey* v. *Coger,* 112 N. Y. 614, 8 Am. St. Rep. 787, 20 N. E. 556, 3 L. R. A. 559; *Hogan* v. *Smith,* 125 N. Y. 774, 26 N. E. 742; *Cleveland etc. Ry. Co.* v. *Brown,* 73 Fed. 970, 20 C. C. A. 147; *Callaway* v. *Allen,* 64 Fed. 297, 12 C. C. A. 114.

The master is not liable if the proximate cause of the injury was the fault of another, or of a fellow-servant with plaintiff. *Evansville R. R. Co.* v. *Henderson,* 134 Ind. 636, 33 N. E. 1021; *Allen* v. *New Gas Co.,* L. R. 1 Exch. Div. 251; *Conger* v. *Flint etc. R. R. Co.,* 86 Mich. 76, 48 N. W. 695; *Trewatha* v. *Buchanan etc. Min. Co.,* 96 Cal. 494, 28 Pac. 571, 31 Pac. 561; *Course* v. *New York etc. Ry. Co.,* 49 Hun, 609, 2 N. Y. Supp. 312; *Cincinnati etc. Ry. Co.* v. *Mealer,* 50 Fed. 725, 1 C. C. A. 633; *Morris* v. *Duluth S. S. Co.,* 108 Fed. 749, 47 C. C. A. 661; *Norfolk and Western Ry Co.* v. *Brown,* 91 Va. 668, 22 S. E. 496; *Bull* v. *Mobile etc. Ry. Co.,* 67 Ala. 206; *Rose* v. *Gulf etc. Ry. Co.* (Tex.), 17 S. W. 789; *New York etc. R. R. Co.* v. *Perriguey,* 138 Ind. 414, 34 N. E. 233, 37 N. E. 976; *St. Louis etc. R. R. Co.* v. *McClain,* 80 Tex. 85, 15 S. W. 789; *Union Pac. Ry. Co.* v. *Callaghan,* 56 Fed. 988, 6 C. C. A. 205; *Vizelich* v. *Southern Pacific Co.,* ·126 Cal. 587, 59 Pac. 129.

Falvey & Davis, for Appellee.

"A railroad must use diligence and care to make and promulgate rules which, if faithfully observed, will give reasonable protection to its employees." Bailey on Master and Servant, p. 42; *Abel* v. *President etc. Co.*, 103 N. Y. 581, 57 Am. Rep. 773, 9 N. E. 325; *Rex* v. *Pullman Palace Car Co.*, 2 Marv. (Del.) 337, 43 Atl. 247.

Upon the point that the negligence of the company combined with the negligence of fellow-servants renders the company liable, see *Grand Trunk Ry. Co.* v. *Cummings*, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 267; *Morrisey* v. *Hughes*, 65 Vt. 553, 27 Atl. 205; *Elmer* v. *Locke*, 135 Mass. 575.

KENT, C. J.—This was an action brought by the appellee for damages for injuries resulting in the death of her son, alleged to have been brought about by the negligence of the defendant railroad company, the appellant in this court. The case was tried before the court and a jury.

The facts adduced upon the trial showed that the defendant, a railroad company, to accommodate the business of a certain mine near Globe, in this territory, built a side-track several hundred yards long, running from the main track for some distance up a steep grade, and near the top of the grade branching into two spurs. At the top of the grade, and where the ground began to be level, these tracks passed under a shed, a structural part of the mine company's plant, for about thirty feet. On ordinary freight box cars passing under the shed brakemen were compelled to stoop or sit down because of the nearness of the top of the car to the roof of the shed. Beyond the shed the tracks were extended upon a trestle about one hundred and ten feet long, and designed for the placing of cars for convenience of loading and unloading at the mine. At the end of this trestle the tracks stopped on the edge of a steep ravine or cañon. In order to place and leave cars on this spur or side track, there being but one connection with the main track, the engine could not go in in advance, but the cars had to be pushed up this spur, and, as the incline was steep leading from the main track, with a small engine some speed was at first required in order to reach the top of the incline. At the place where the steep grade ceased, the shed referred to spanned the track in such

a way as to cut off the view between those on the engine and the far end of a train pushed up the incline on the side track. The roof of the shed was so low as to make it difficult to use hand-brakes on the cars while passing through the shed. There was no obstruction placed at the end of the track and trestle which would prevent the cars from going beyond the track and falling into the ravine, except a piece of pine timber of a size twelve by twelve inches, bolted at each end, and screwed to the ties, rising to a height above the rails of ten or twelve inches. The object of this timber was not to serve the purpose of what is known as a "bumping post," and the timber was not sufficient to arrest the motion of cars propelled at even a comparatively slow rate of speed, but was placed there primarily to prevent cars that were stationary on the track, and that might become loosened by accident or otherwise, from running off the track at the end, and was sufficient for that purpose.

The decedent was employed by the defendant company as a brakeman, and had been in its service for about twelve days when he met his death, and during that time he had been frequently on the premises in question, engaged in his duties as a brakeman, but it was not shown that prior thereto he had had experience in the duties required of him. Under ordinary circumstances, in switching cars onto this side track, it was proper and usual to keep the engine attached to the cars until they were stopped at the desired position. At the time of the accident in question, instead of adopting the usual method, the conductor of the freight train upon which the decedent was employed adopted the unusual method, while the train was in full motion, of cutting off two cars from the rest of the train, which was being pushed by the locomotive, intending to let them go in on the side track by their own momentum, and, with the aid of the deceased, who was on the front car, stop them by means of the hand-brakes when they had attained the desired position. When the cars were cut off the train, they were going at a rate of speed estimated by some witnesses as great as six miles an hour. After they had passed through the shed they were still going at such a rate of speed that the deceased and the conductor, who was on the last car, were unable to control them, and the forward car, upon which the deceased was riding, knocked the pine barrier

from its position, and was precipitated with the deceased into the ravine, and the deceased was immediately killed.

There was nothing to show that the deceased was aware of the purpose of the conductor to cut the cars loose from the train, or that, although the deceased knew the premises, he had had sufficient experience either to be aware of the danger of the premises, or to be chargeable with the knowledge of the dangers as a matter of law. Testimony was offered by the defendant to show that the premises were reasonably safe when used in a proper manner, and by the plaintiff to show that they were dangerous, not only when used in a reckless manner, but dangerous even when the work was performed with due care. The evidence, however, tended to show that if the cars had been put in on the side track in the usual manner—that is, by being attached to the engine with the use of air-brakes until the cars had attained the position desired—the accident and injury would not have occurred; and that the accident was brought about by the method adopted by the conductor of the train in cutting off the end cars and sending them upon the side track without the control of the engine. It appeared, also, that this unusual method had been resorted to once or twice before by the conductor, but that the ordinary custom, known to the conductor, who was an experienced man, was to "spot" the cars by means of the engine.

The court denied the motion of the defendant to instruct the jury to return a verdict for the defendant, and the jury returned a verdict for the plaintiff in the sum of five thousand dollars.

The first error assigned is that the court, at the close of the evidence, should have directed a verdict for the defendant; and it is urged that the case comes within the rule that if the evidence, with all the inferences that the jury can justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such verdict if returned must be set aside, then it is the duty of the court to direct a verdict for the defendant. *Randall* v. *Baltimore etc. R. R.*, 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003. Upon the evidence in this case, however, we cannot say that the jury would not have been justified in returning a verdict for the plaintiff on the ground that the premises provided by the master for the

work to be done were not reasonably safe, if the master's negligence in this respect contributed to the accident. The testimony as to the character of the premises is not so conclusive or undisputed as to make it a question of law for the court, rather than a question of fact for the jury, to decide whether the premises were reasonably safe, and, if unsafe, whether the negligence of the master in that respect contributed to the injury. We think it was not error, therefore, for the court to refuse the direction requested.

We have next to consider the errors assigned in the instructions to the jury given by the court, and in the modification by the court of the instructions requested by the defendant and as so modified given to the jury. At the request of the plaintiff, the court instructed the jury, in effect, that if they believed that the track was not constructed for the purpose of switching cars in the manner in which it was done on the occasion of the injury, but that the track was intended to be used for switching such cars by means of a locomotive engine connected with the cars by air brakes, or, as it was termed, by "spotting" the cars, then they should decide whether the defendant was negligent in failing to notify its employees that the track was constructed for the use in such latter manner, and in failing to require them to use it in such manner, or was negligent in not warning them from using the track in the manner adopted at the time of the accident, and, if the injuries resulted from a failure of the defendant to so warn its employees, or resulted from the negligence of the conductor combined with such failure to warn its employees, the plaintiff was entitled to recover, unless the jury should find against the plaintiff under the subsequent provisions of the charge. We think in this case the question whether the defendant was negligent in failing to make such rules or give such warning as specified should not have been submitted to the jury. The complaint contained no charge of negligence in this respect, and that issue was not properly raised. The evidence showed that the employees worked under standard rules familiar to all railroad men of experience, with which the conductor was familiar, and that to have made such a rule as suggested would have been extraordinary, or, as expressed by one witness, "would have been called a ridiculous order." The evidence further showed that the

conductor had a knowledge of the uniform custom in respect
to the method of performing the work which was being done
at the time of the accident, and that such custom was not the
method employed by him at the time of the accident, but was
the method of spotting the cars above referred to.    Where
such a uniform custom exists, sanctioned by the master, and
the employee has knowledge of such custom, the necessity
of the adoption of formal rules in respect thereto is dispensed
with.    *Rutledge* v. *Missouri Pacific Ry. Co.,* 123 Mo. 121, 27
S. W. 528; *Luebke* v. *Railway Co.,* 63 Wis. 91, 23 N. W. 136,
53 Am. Rep. 266; *Texas and P. R. Co.* v. *Campbell* (Tex. Civ.
App.), 39 S. W. 1104.    And the failure to adopt a rule as to
precautions to be observed by his employees is not proof of
negligence rendering a master liable to a servant, unless it
appears from the nature of the business in which the servant
is engaged that the master, in the exercise of reasonable care,
should have foreseen the necessity of such precautions.    *Mor-
gan* v. *Hudson River Co.,* 133 N. Y. 666, 31 N. E. 234.

In the instructions given by the court at the request of the
plaintiff the court said, in substance, that if the injuries were
caused by the negligence of the conductor, and the negligence
of the defendant did not contribute thereto, the jury should
find for the defendant; but that, if the conductor was negli-
gent, and the defendant was also negligent, in reference to the
character of the premises or in the failure to notify its em-
ployees with reference to spotting the cars on the track, and
such negligence of the defendant contributed to the injuries,
then the plaintiff should recover.    Except so far as in this case
the question of rules or notice is concerned, this instruction
correctly stated the law as to the liability of the master for
a concurring cause.    In the main charge given, the court does
not discuss the question of proximate cause, nor, except as
above stated, was the question presented to the jury whether,
if such negligence of the conductor, who it is admitted was
the fellow-servant of the deceased, was the direct or proximate
cause, the defendant could still be held liable if in any way at
fault.

From the evidence in this case we think the fundamental
questions to be determined by the jury in arriving at their
verdict, apart from the question of assumed risks, were with
respect to the character of the premises as providing a rea-

sonably safe place for the work, and, if unsafe, whether the negligence of the master in that respect or any other contributed to the injury, or whether the injury was proximately caused by the negligence of the fellow-servant. We think, therefore, that the jury would have had the matters to be determined more clearly in mind if the court in its main charge had instructed them specifically as to the freedom from liability of the defendant if the proximate cause of the injury was the negligence of the fellow-servant. The absence of such instruction would not alone be ground for reversal where a charge, as given, correctly interpreted the law in other respects. The defendant, however, requested the court to give to the jury the following instruction: ''The court further instructs the jury that if they believe from the evidence that for a year or more prior to the death of Lyon it had been the uniform custom of the employees of the defendant to put its cars on the spur in question by pushing them in with the engine, and under control of the engine, and that said method was reasonably safe in view of the situation of the premises; and that the conductor of said train, H. L. Rigg, was aware of said custom, and knew that said method was reasonably safe, and also knew that to throw said cars in detached from the engine, as was done at the time of the accident, was not a safe method, and that on the occasion of the accident said conductor caused said cars to be thrown in by said unsafe method, and that such act was the proximate cause of said accident, and that said unsafe method was adopted without direction or authority from the defendant, and had not been used more than two or three times before then, the plaintiff cannot recover, although defendant had furnished no written or printed rules governing the operation of trains at that point.'' The court refused the instruction as requested, but modified it by striking out the words ''had not been used more than two or three times before,'' and inserting in the place thereof ''was not coupled with any negligence on the part of defendant company,'' and gave the instruction so modified. The latter part of the instruction then read: ''And that on the occasion of the accident said conductor caused said cars to be thrown in by said unsafe method, and that such act was the proximate cause of said accident, and that said unsafe method was adopted without direction or authority from the defend-

ant, and was not coupled with any negligence on the part of defendant company, then the plaintiff cannot recover, although defendant had furnished no written or printed rules governing the operation of trains at that point.'' We think the court overlooked the effect of this instruction, as so modified, in its relation to the freedom from liability of the defendant if the negligence of the fellow-servant was the proximate cause. If the act of the conductor was the proximate cause of the injury, then it made no difference with respect to the freedom from liability of the defendant, as a matter of law, whether the negligence of the conductor was or was not coupled with the defendant's negligence. It is, of course, well settled that if the injury was caused both by the negligence of the fellow-servant and the negligence of the master, then the master is liable. His negligence is then a contributory or co-operative cause, for which he is liable. *Grand Trunk Ry. Co.* v. *Cummings,* 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; *Elmer* v. *Locke,* 135 Mass. 573; *Atchison, T. & S. F. Ry.* v. *Lannigan,* 56 Kan. 109, 42 Pac. 343; *Morrisey* v. *Hughes,* 65 Vt. 553, 27 Atl. 205. But when the proximate cause of the injury is the negligence of a competent fellow-servant, no recovery can be had, even though the place or appliances are defective, and the master is negligent in that respect; and whether such negligence of the fellow-servant was the proximate cause, or whether the defendant's negligence was a contributory cause, is ordinarily a question for the jury. Wood on Master and Servant, 812; *Vizelich* v. *Southern Pacific Co.,* 126 Cal. 587, 59 Pac. 129; *Trewatha* v. *Buchanan G. M. and M. Co.,* 96 Cal. 494, 28 Pac. 571, 31 Pac. 561; *Southern Pacific Co.* v. *Yeargin,* 48 C. C. A. 497, 109 Fed. 436; *Whitman* v. *Wisconsin etc. Ry. Co.,* 58 Wis. 408, 17 N. W. 124; *C. N. O. and T. P. Ry.* v. *Mealer,* 1 C. C. A. 633, 50 Fed. 725; *M. and S. P. Ry. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256; *Norfolk and W. Ry. Co.* v. *Brown,* 91 Va. 668, 22 S. E. 496; *Edmondson* v. *Kentucky Central Ry. Co.,* 105 Ky. 497, 49 S. W. 200, 448; *Arizona Lumber and Timber Co.* v. *Mooney,* 4 Ariz. 366, 42 Pac. 952; *Little Rock and M. R. Co.* v. *Barry,* 28 C. C. A. 644, 84 Fed. 944, 43 L. R. A. 349. It is the master's duty to provide a safe place to work, but that principle is not applicable where the place becomes dangerous in the progress of the work from the manner in which the work is done, or is made dan-

gerous only by the carelessness and neglect of fellow-servants. *Cleveland etc. Ry. Co.* v. *Brown,* 20 C. C. A. 147, 73 Fed. 970; *Callaway* v. *Allen,* 12 C. C. A. 114, 64 Fed. 297; *Hussey* v. *Coger,* 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. Rep. 787; *Hogan* v. *Smith,* 125 N. Y. 774, 26 N. E. 742. In the instruction as modified and given the jury were justified in believing that, although they should determine that the negligence of the fellow-servant was the proximate cause of the injury, or the place was made unsafe solely by reason of the unsafe method adopted, they might yet find a verdict for the plaintiff, provided only they should find that the defendant was negligent in some respect, whether such negligence contributed to the injury or not. The error in this instruction as given was not so cured by the main charge on the question of concurrent liability that we can say the jury was not misled by it.

The defendant also requested an instruction to the effect that at the time of the injury all the trainmen were fellow-servants with the deceased, "and the law is that, if said injury was proximately caused by the conductor of said train, then the plaintiff cannot recover." The court modified the instruction by inserting after the word "train" the words "without previous notice in the defendant company of the conductor's incompetency, carelessness, or negligence." We think this modification was not correct, in view of the pleadings and the testimony. No allegation is made in the complaint of incompetency on the part of the conductor, or that the master had notice thereof; nor was there evidence, if such incompetency existed, that the company had such notice, or that it could have had such notice by the use of reasonable diligence. We do not think the jury should have had left to them to determine the question of fact as to whether notice was given to the company of any incompetency of the conductor; and if it were proper to leave this question for them to determine, it should not have been left in a form from which the jury might assume as a fact that the incompetency existed.

For the reasons stated, we think the judgment should be reversed and the case remanded to the district court for a new trial.

Sloan, J., and Doan, J., concur.