FOWLER vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY and another.

*September 24 — October 14, 1884.*

RAILROADS: MASTER AND SERVANT. *Injury to employee: Negligence of co-employee: Defective appliances: Proximate cause.*

A switchman employed in the yard of a railroad company was injured while making a coupling, by the engine used for switching being backed down upon him without warning and catching his hand between a freight car and the " goose-neck " coupling iron projecting from the rear end of the engine. The engine was not a regular switch-engine (which does not have the " goose-neck " projection and is so constructed that the view therefrom backward is unobstructed), but was a common passenger engine. It had, however, been used by the switchman for sixteen days, was of the kind commonly used in small yards, and was safe for switching purposes if used with proper care. *Held*, that the negligence of those in charge of the engine, and not any insufficiency or unfitness in the engine itself, was the proximate cause of the injury, and that the company was therefore not liable.

APPEAL from the Circuit Court for *Juneau* County.

Action for personal injuries received by the plaintiff while in the employ of the defendants, *The Chicago & Northwestern Railway Company* and *The Chicago, St. Paul, Minneapolis & Omaha Railway Company.* The facts are sufficiently stated in the opinion. At the close of the plaintiff's testi-

mony a motion for a nonsuit was granted, and from the judgment entered accordingly the plaintiff appealed.

For the appellant there was a brief by *Lusk & Perry*, and oral argument by *Mr. Lusk.*

*Wm. F. Vilas*, for the respondent *The Chicago & Northwestern Railway Company.*

ORTON, J.   The respondent companies use the same yard and the same engine, and jointly employ the men to do the switching, to distribute the cars to the several roads at their junction at Elroy.   The plaintiff was, and had been for nearly a year, employed about the yard, and for sixteen days as the switchman to couple and uncouple this engine and the cars to be moved, and in this instance had caused the engine to be stopped at about twelve feet from the freight car to be coupled, and had stepped down from the engine and had taken the link therefrom, and had reached the freight car, and had just raised the pin to insert the link, when, without his order or knowledge, or any signal whatever, the engine was moved slowly down upon him, and his hand was caught between the freight car and the goose-neck coupling-iron which projected from the rear end of the engine, and was crushed and mangled.

The engine used was a common passenger engine, and had been used by the plaintiff for this purpose for sixteen days, and when first employed he had been instructed as to its use in such coupling, and understood it perfectly, and its use in such coupling was safe and harmless to the switchman using proper care.   In many large yards, where much switching was to be done, what was called a switch-engine was used, which had not this goose-neck projection, and was made with the top sloping backwards, so that the engineer or fireman could look back and see the person doing the coupling.   Such an engine had at one time been used in this yard.

The *gravamen* of the complaint and the argument is that these companies furnished this unsuitable engine with this dangerous goose-neck projection by which the plaintiff was injured, and that if they had used the engine specially constructed for and adapted to such use, and required by the amount of switching to be done in such a yard, he would not have been injured. The duty of railway companies to furnish proper and safe machinery and other appliances, and their liability for injury to their employees occasioned by their neglect to do so, have become elementary principles. But the projecting goose-neck of this passenger engine was not the proximate cause of the injury in this instance. It was only the instrument which inflicted it. This kind of engine was commonly and safely used for switching in all small yards and in many larger ones, and had been generally used in this yard. The plaintiff in his testimony, after describing the proper manner of coupling with such an engine, said: " If we couple in that way, there is no danger of being pinched by the end of the bumper. I could see that by looking at it, just as well as I could by being told by forty men." After describing the manner in which he was doing his work, and the backing of the engine upon him, he said, in answer to the question, " What troubled you, then, was not the projection of the goose-neck, but it was the fact that the engine was run onto you, was it not?" " Yes, sir; the engine was run onto me."

The plaintiff himself makes no claim or complaint in his testimony that there was any difficulty in his making the coupling with this engine in perfect safety, and as well as with a switch-engine, so called, if the engine had not been " run onto him " before he was ready and before he gave the signal. The evidence is that this engine was as safe for switching purposes as any other if used with proper care. It would be an extremely hard rule upon railway companies or other employers to require them to furnish to their em-

ployees such machinery or other appliances for their use as could not injure them by their own negligence or want of ordinary care. Such a rule would require them to anticipate and provide against the consequences of all possible acts of negligence of their employees. This engine was perfectly safe if prudently used as a switch-engine.

It is perfectly clear that the injury of the plaintiff was caused by the negligence of the engineer or his brakeman in running the engine upon him in the manner they did without notice, signal, or warning, and they were his fellow-servants in the same general work, and he cannot recover on account of their negligence. If this view of the case is not sustained, it is very clear that the plaintiff was well acquainted with the character of this engine, and its suitableness for such use, and had actually used it for such purpose for a considerable length of time, and knew well the risks of the business by the use of it, if any, when he entered upon the employment, and he could scarcely recover if his injury had been caused directly by it. But it is idle to speculate about a case not before us. Here he was not injured in consequence of any danger in the prudent and careful use of this engine, or of its peculiar construction, but solely by the negligence of his co-employees. The law applicable to such a case is so indisputable and well established that the citation of adjudicated cases is not necessary. The circuit court properly granted a nonsuit in the case made by the plaintiff.

*By the Court.*— The judgment of the circuit court is affirmed.