Ft. Wayne Iron, etc., Co. *v.* Parsell—168 Ind. 223.

FT. WAYNE IRON & STEEL COMPANY *v.* PARSELL.

[No. 20,846. Filed December 14, 1906. Rehearing denied February 27, 1907.]

1. PLEADING. — *Complaint. — Master and Servant.—Employers' Liability Act.*—A complaint showing that the servant was injured while acting under the orders of the master's foreman, but which fails to show that it was such foreman's negligence which caused the injury, does not state a cause of action under subdivision 2 of section 1 of the employers' liabilty act (§7083 Burns 1901, Acts 1893, p. 294). p. 227.

2. SAME. — *Complaint.—Master and Servant.—Employers' Liability Act.*—A complaint by the servant against the master for injuries received because of the negligence of a person performing the master's duty must show that such person's negligence occurred while in the performance of the master's duty. p. 227.

3. MASTER AND SERVANT.—*Employers' Liability Act.—Vice-Principals.*—The latter part of subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, does not increase the class of vice-principals existing at the common law, and limits the right of recovery on account of a vice-principal's negligence to persons injured obeying the orders of a superior with authority to direct. p. 227.

4. PLEADING. — *Complaint.—Statutory Cause.—Employers' Liability Act.*—A complaint for negligence under subdivision 4 of section 1 of the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294) must show that the plaintiff clearly comes within the provisions thereof. p. 227.

5. SAME. — *Complaint. — Negative Pregnant. — Negligence.*—A complaint alleging that the master "did not provide means by which the entrance of steam and hot water into the boiler could be securely excluded," implies that some means were supplied, and the complaint should show wherein the means used were defective. p. 228.

6. SAME. — *Complaint.—Negligence.—Master and Servant.—Notice of Defects.*—A complaint by the servant showing that the master ordered him to enter a boiler, connected with two other boilers, to do certain work without notifying him "of the danger to be incurred by the sudden entrance of steam, and hot water while he was therein," is bad, since it fails to show the need or useful purpose of such notice, and fails to show that either steam or hot water was in the connecting boilers when he entered. p. 228.

7. PLEADING.—*Complaint.*—*Master and Servant.*—*Defective Ways and Works.*—A complaint by the servant showing that the master made "no effort to shut off and exclude the steam and hot water from the boiler" in which the servant was working, is bad, since it implies that some provision was made for shutting off such steam and water, and fails to show the acts of negligence in failing to use the means provided. p. 229.

8. SAME. — *Complaint.*—*Negligence.*—*Fellow Servants.*—A complaint showing that the master ordered the servant to work in a boiler, and that while working therein a fellow servant negligently caused hot water and steam to be forced through a pipe into such boiler, thereby scalding such servant, is bad, since the master is not liable for the negligence of such fellow servant. p. 229.

9. MASTER AND SERVANT.—*Works, Ways and Machinery.*—*Fellow Servants.*—It is the duty of the master to furnish reasonably safe ways, works and machinery for the servant; and the negligent use of same by a fellow servant does not create a further liability. p. 230.

From Dekalb Circuit Court; *Emmet A. Bratton,* Judge.

Action by James R. Parsell against the Ft. Wayne Iron & Steel Company. From a judgment on a verdict for plaintiff for $2,500, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Elmer E. Stevenson* and *Zollars & Zollars,* for appellant.

*Chapin & Denny, T. R. Marshall* and *D. M. Link,* for appellee.

MONTGOMERY, C. J.—Appellee commenced this action to recover damages for a personal injury alleged to have been negligently inflicted upon him while in appellant's employ.

The complaint, omitting the formal parts, was as follows: "That on March 15, 1904, the plaintiff was in the employ of the defendant as a laborer at its plant aforesaid in loading cars for the defendant; that defendant had as a part of its plant three large upright steam boilers which it used in its business, and each of which, near its lower

end, was connected with an upright pipe extending down below the boiler and connecting with a horizontal mud pipe, through which, by means of steam in the boiler, the mud and sediment in the boiler could be forced out down through the upright connecting pipe into the mud pipe and the boiler thereby cleansed; that in each of the upright connecting pipes aforesaid means should have been provided by which all communication of the interior of the boiler with the mud pipe could have been securely closed; that at the lower end thereof each boiler was provided with a manhole and cover, through which manhole a person could enter the boiler. And plaintiff further says that on the day aforesaid Harry Green, a master mechanic and superintendent of the defendant, in charge of said plant and the boilers aforesaid, ordered the plaintiff to leave his work of loading the cars and to enter through the manhole into one of said boilers and scrape out the sediment and scales therein, which remained after the boiler had been blown out; that said Green had the authority, then and there acting for and in the place of the defendant, to direct the plaintiff to perform such service, and which it was his duty to obey. And plaintiff further says that, in obedience to said order, he entered the boiler through the manhole and proceeded to perform such service, without knowledge of the hazard thereof. He further says it was the duty of defendant, while he was in the same, to close and keep securely closed all communication of the other boilers with the boiler in which he was at work, and to protect him from danger, but, instead of so doing, and while he was at work therein, the defendant, by its officers and employes, carelessly and negligently, without any notice to plaintiff, forced the hot water and steam out of one of the boilers into the mud pipe below, without keeping the connecting pipe of the boiler in which plaintiff was working securely closed, with such force and in such quantities that said hot water and steam entered through the upright pipe into the

boiler in which plaintiff was at work, and before he could escape he was dangerously and severely scalded and burned, by reason of which he became wounded, sick and sore, and suffered and still suffers great pain therefrom, and has been wholly disabled from the time of receiving said injury to the present from performing any labor whatever, and he was confined to his bed for over three months. And he further says that some of his wounds do not heal, and that one arm and one hand are crippled, and that he will never again regain the free use thereof; that the scars of the wounds which he so received disfigure his person and are tender and subject him to annoyance and discomfort. He further says that he was obliged to employ and did employ a surgeon and nurses to attend him while confined to his bed and room, and that he has incurred great expense by reason thereof. And plaintiff avers that defendant was further careless and negligent in this, to wit: That it did not provide means by which the entrance of steam and hot water into the boiler while plaintiff was at work therein could be securely excluded, which defect was not obvious or known to plaintiff, but which was known, or should have been known, by defendant; that it failed to notify plaintiff before he entered said boiler of the danger to be incurred by the sudden entrance of steam and hot water while he was therein; that it did not endeavor to shut off and ex-clude the steam and hot water from said boiler while plaintiff was therein; that it failed to give plaintiff any notice of its purpose to turn the hot water and steam into the mud pipe. Plaintiff says that he never before had been employed in such service and was wholly unaware of any danger in performing the same, and trusted and relied upon the defendant to protect him while discharging his duty, and that his said injuries were occasioned by the sole negligence aforesaid of defendant and its officers, and that he has been damaged in the premises in the sum of $5,000, for which he demands judgment."

Appellant's demurrer to the complaint, on the ground that it did not contain facts sufficient to constitute a cause of action, was overruled, and this ruling is the first alleged error assigned.

The allegation is made that appellee was at work at the time of receiving his injury in obedience to the order of Harry Green, duly authorized in that behalf, and which order it was his duty to obey, but it is not charged that his injury was caused by the negligence of said Green, and it is therefore clear that no cause of action is stated under the second subdivision of section one of the employers' liability act. Acts 1893, p. 294, §7083 Burns 1901. And see *Louisville, etc., R. Co.* v. *Wagner* (1899), 153 Ind. 420; *Whitcomb* v. *Standard Oil Co.* (1899), 153 Ind. 513; *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558.

It is not expressly charged or otherwise shown that the wrongful negligence was that of any person at the time acting in the place and performing the duty of the master, and it is accordingly manifest that the complaint cannot be upheld under the latter part of the fourth subdivision of section one of said act. This part of the fourth subdivision does not increase the class of vice-principals existing at common law, and at the same time limits a right of recovery thereunder, on account of the negligence of a vice-principal, to persons injured while obeying and conforming to the order of some superior having authority to direct. *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 59 L. R. A. 792. It is a well-settled rule, however, that a party seeking to avail himself of a statutory action must, by proper averments, bring himself clearly within its provisions. *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680; *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 96, 102 Am. St. 185; *Chicago, etc.,*

*R. Co.* v. *Barnes* (1905), 164 Ind. 143. It follows that this must be treated as an action at common law, and the sufficiency of the complaint determined upon that theory. It is apparent that the pleader had no clearly defined theory in his own mind when drafting the complaint. After having stated the negligence seemingly relied upon as a basis for the action, the following paragraphs were added, connected as shown: "And plaintiff avers that defendant was further careless and negligent in this, to wit: That it did not provide means by which the entrance of steam and hot water into the boiler while plaintiff was at work therein could be securely excluded, which defect was not obvious nor known to plaintiff, but which was known, or should have been known, by defendant; that it failed to notify the plaintiff before he entered said boiler of the danger to be incurred by the sudden entrance of steam and hot water while he was therein; that it did not endeavor to shut off or exclude the steam and hot water from said boiler while plaintiff was therein; that it failed to give plaintiff any notice of its purpose to turn the hot water and steam into the mud pipe."

These averments added nothing to the strength of the complaint. The first clause charges that appellant did not provide means by which the entrance of steam and hot water into the boiler could be securely excluded. This is an implied admission that some means for the purpose were supplied, but no attempt is made to state in what respect they were defective or inadequate.

It is next averred that plaintiff was not notified of the danger from the sudden entrance of steam and hot water into the boiler in which he was working. No facts are averred showing the necessity of such notice, or what useful purpose would have been thereby subserved. It is not alleged that either of the other boilers

contained steam or hot water at the time appellee entered the empty boiler, or that they would probably be in use while he was engaged at such work.

It is further averred that no effort was made to shut off and exclude the steam and hot water from the boiler in which appellee was working. This statement confirms the implied admission that provision of some character was made for excluding steam and hot water from this boiler, which, if properly used, might have proved effectual. In short, we are unable to say from the uncertain and confused allegations of the complaint that there was a defect in the construction or maintenance of the apparatus connected with the boiler which made the place in which appellee was set to work inherently dangerous. Neither are facts pleaded to show that appellee was set to work amidst such surroundings and conditions as to expose him to an unknown danger without proper precaution for his safety.

Reading the subsequent allegations in connection with the primary charge of negligence, and the complaint alleges, in substance, that while appellee was working in obedience to orders from one having authority to direct him, and therefore in the line of his duty, some officer or employe of appellant's, without warning and without having securely closed the valve in the connecting pipe, carelessly and negligently caused the hot water and steam from one of the other boilers to be forced through the mud pipe and into the boiler in which appellee was at work, in such quantities as to burn and scald his person.

No special peril in being at work in the empty boiler described is disclosed, but the danger arose from the negligence of some one in failing to close, or in opening, the shut-off valve in the connecting pipe, or, under the circumstances, in negligently suffering steam and hot water to be emitted from one of the other boilers, without first ascertaining that the valve in this connecting pipe was closed.

The conclusion is unavoidable that the proximate negligence to which the injury must be attributed was that of some employe performing service about the foundry for the common master. And this negligence consisted in a failure to use, or in the improper use of, appliances furnished by the master, and, so far as shown, reasonably safe and suitable for the purpose for which they were designed.

9. The master must supply reasonably safe and suitable appliances and instrumentalities for the performance of his work, and thereafter must exercise care to keep the same in reasonably safe condition, and, having performed these duties, he cannot be held responsible for an accident which results from the negligence of a servant in failing to make proper use of such appliances and instrumentalities in the performance of the work to be done. Dill v. Marmon (1905), 164 Ind. 507, 69 L. R. A. 163; Southern Ind. R. Co. v. Harrell (1904), 161 Ind. 689, 63 L. R. A. 460; Southern Ind. R. Co. v. Martin (1903), 160 Ind. 280; Kerner v. Baltimore, etc., R. Co. (1897), 149 Ind. 21; Neutz v. Jackson Hill Coal, etc., Co. (1894), 139 Ind. 411; New Pittsburgh Coal, etc., Co. v. Peterson (1894), 136 Ind. 398, 43 Am. St. 327.

The complaint, as we construe it, fails to state a cause of action, and appellant's demurrer for want of facts should have been sustained.

The judgment is reversed, with instructions to sustain appellant's demurrer to the complaint.