IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1907, AND MAY
TERM, 1908, IN THE NINETY-SECOND YEAR
OF THE STATE.

---

### HASKELL & BARKER CAR COMPANY v.
### PRZEZDZIANKOWSKI.

[No. 21,031. Filed January 29, 1908.]

1. RAILROADS.—*What Are.*—*Manufacturing Plants.*—A manufacturing plant which uses a "pony" engine in transporting materials about its establishment does not constitute a "railroad." p. 4.

2. APPEAL.—*Controlling Questions.*—Where the answers to the interrogatories affirmatively show that plaintiff's cause of action is unfounded, other questions raised will not be considered but the litigation will be ended. p. 5.

3. TRIAL.—*Interrogatories.*—*Answers.*—*Negligence.*—*Leaving Truck Near Track.*—An answer to an interrogatory, in an action by a servant against his master for knowingly permitting an empty truck to remain too near a track, thereby causing the plaintiff injuries, that there was no evidence to show when or by whom such truck was so left, fails to show any negligence on the part of the master. p. 8.

4. MASTER AND SERVANT.—*Concurrent Negligence of Master and Fellow Servant.*—The master is liable to his servant for injuries caused by the master's negligence, though a fellow servant's negligence concurred in producing the injury. p. 8.

5. SAME.—*Leaving Truck Near Car Track.*—The leaving of a truck in dangerous proximity to a car track is the act of a fellow servant; and the master is not liable for injuries sustained therefrom by a servant, unless such master's negligence also concurred in producing the injury. p. 9.

6. MASTER AND SERVANT.—*Safe Place.*—The master is required to provide his servant a reasonably safe place in which to work, and to exercise ordinary care to keep such place in a safe condition. p. 9.

7. SAME.—*Assumption of Risk.*—The servant assumes the ordinary risks of the service which he undertakes, including the risks of the negligence of competent fellow servants. p. 9.

8. WORDS AND PHRASES.—*"Place."*—*Master and Servant.*—The word "place," as used in master and servant cases, imports the premises where the work is to be done, and does not comprehend the negligent acts of fellow servants by which the premises are rendered unsafe. p. 10.

9. MASTER AND SERVANT.—*Safe Ways, Works and Machinery.*— The master's duty in respect to ways, works and machinery is completed when he has furnished a reasonably safe place in which to work and reasonably safe appliances with which to work. p. 10.

10. SAME.—*Leaving Truck Near Track.*—A company is not liable for injuries received by its servant because of the temporary leaving of a truck near a track where it was struck by a "pony" engine used by the master in its manufactory, thus causing injuries to such servant. pp. 10, 15.

11. SAME.—*Operation of "Pony" Engine.*—*Lookout.*—It does not constitute actionable negligence for a manufacturing company to operate its slowly-moving, "pony" engine in transporting materials about its factory, without the employment of a lookout to discover and warn other servants of danger. p. 11.

12. SAME.—*Negligence.*—*Proximate Cause.*—The master is not liable for the result of negligence which no reasonable person would have foreseen or anticipated. p. 13.

13. SAME.—*Operation of "Pony" Engine Without Fireman.*—*Proximate Cause.*—The failure of the master to provide a fireman, who could warn of dangers, for a slowly-moving, "pony" engine, used in transporting material about the factory is not a proximate cause of an injury received by another servant because of the striking of a truck standing too near the track, by a car pushed by such engine, thus injuring a servant. p. 13.

14. SAME.—*Negligence.*—*Proximate Cause.*—*When Question for Court.*—When the facts are undisputed, what is the proximate cause of an injury is a question of law for the court. p. 15.

15. APPEAL.—*Final Judgment.*—*Interrogatories.*—Where the answers to interrogatories to the jury show clearly that plaintiff's cause of action is unfounded, a final judgment will be ordered for defendant. p. 15.

From Laporte Circuit Court; *John C. Richter,* Judge.

Action by Frank Przezdziankowski against the Haskell & Barker Car Company. From a judgment on a verdict for plaintiff for $9,500, defendant appeals. Transferred from Appellate Court under §1393 Burns 1908, Acts 1907, p. 237, §2. *Reversed.*

*Frank E. Osborn, W. A. McVey, Lee L. Osborn* and *Martin T. Krueger,* for appellant.

*Ellsworth E. Weir, Arthur Irwin, Frank W. Koraleski* and *Royal W. Irwin,* for appellee.

MONTGOMERY, J.—This is a common-law action for negligence involving the relation of master and servant.

It is averred, among other things, in the first paragraph of appellee's complaint, that appellant owned and operated a manufacturing plant, including a foundry and yards, and through and about its premises operated a certain "pony engine" and cars, and also owned a number of trucks for transporting materials by hand about its establishment; ·that a railroad track ran through said plant westward to a coal shed, and described a short curve to the north at the point of the accident; that certain piles of iron stood north of said track leaving a space between the same and the track sufficiently wide to allow said trucks to pass in safety; that at the time of the accident appellee was at work north of the track loading certain iron upon a truck; that on said day appellant by and through its servants, whose names are unknown to appellee, carelessly and negligently permitted a certain truck to remain across said passageway in close proximity to the track, and appellant carelessly and negligently permitted its engine to be propelled over said track and past said point in charge of but one man (the engineer), and carelessly failed to provide another person to keep a lookout upon the side of the track where said truck was located; that as said engine passed westward over said track drawing a flat-car, which had two stakes upon each side, running down beyond the bottom of the car bed and resting upon the steel

truss which separated the side beams underneath said car, in passing the point where the track curves, and the truck had been carelessly left as aforesaid, said truck was caught by one of the stakes upon said car and carried along and thrown against appellee with force and in such a manner as to crush his leg between said truck and a pile of iron, necessitating amputation at the knee.

The second paragraph of complaint alleged that appellant carelessly and negligently suffered and permitted the truck to be placed in its yards in such close proximity to the railroad track that said car in passing that point would hook onto the same, and, knowing of the location of said truck, carelessly and negligently suffered and permitted it to be and remain in such place until the happening of the accident.

The negligence alleged in the fifth paragraph of complaint was in allowing a certain footstep on said flat-car to be and remain in a broken, bent and twisted condition, in such a way as to project from the side of the car and catch upon said truck.

Demurrers to each of these paragraphs of complaint were overruled, and appellant answered by general denial. A trial by jury resulted in a verdict for appellee, and with its general verdict the jury returned answers to numerous interrogatories. Appellant's motion for judgment upon the answers of the jury to interrogatories, notwithstanding the general verdict, and motion for a new trial, were overruled, and judgment rendered in favor of appellee in accordance with the general verdict.

The assignment of errors in this court embraces all adverse rulings. Appellant is not a railroad company engaged in transportation, and it appears from the evidence
1.    and answers to interrogatories that the car in question was owned by another company, and was received upon its siding merely to be unloaded. It is manifest, therefore, that the duty of inspection owed by a transportation company to its employes does not obtain in this case. *Louis-*

*ville, etc., R. Co.* v. *Bates* (1897), 146 Ind. 564, 570; *Neutz* v. *Jackson Hill Coal, etc., Co.* (1894), 139 Ind. 411, 416; *McMullen* v. *Carnegie Bros. & Co.* (1893), 158 Pa. St. 518, 27 Atl. 1043, 23 L. R. A. 448; *McGill* v. *Maine, etc., Granite Co.* (1899), 70 N. H. 125, 46 Atl. 684; 85 Am. St. 618.

Appellee's counsel concede that the verdict cannot rest upon the fifth paragraph of complaint, and this paragraph will not receive further consideration.

The insufficiency of the first and second paragraphs of complaint has been earnestly and ably urged. Without discussing these errors separately, it is our conclusion 2. that the merits of the controversy so fully appear from the answers of the jury to interrogatories as to enable and to require us to end the litigation. It appears from the special findings of the jury: That on June 7, 1905, appellant was a corporation owning and operating a plant for the manufacture of railroad cars at Michigan City. Appellee was thirty years of age, and possessed of good eyesight and hearing. He had been employed as a miner in Pennsylvania, worked three years in a factory at South Bend, and entered appellant's employ July 16, 1902, and remained in its service for three years immediately before receiving his injury. He worked one year in the wheel foundry, one year in the blacksmith shop, and the last year as a roustabout. While so employed, at 9 o'clock a. m. on June 7, 1905, appellee was injured at a point between the foundry and the blacksmith shop, on what was formerly known as Sixth street in Michigan City. During all of the period of appellee's employment appellant owned and maintained a railroad track commencing at a three-throw switch situated at a point east of its foundry and proceeding thence south and curving into Sixth street and running thence west through its plant and upon said street, and north of said track was situated a coal bin or storage, to and from which appellant ran coal-cars about every other day. Appellee was injured at a point about one hundred fifty feet east of the end of said coal bin,

at which point Sixth street was sixty feet wide between the buildings. During the time appellee had worked for appellant piles of iron had stood east of said coal bin and north of the railroad track, and at the time appellee was injured five or more piles of such iron were in said place. During the winter previous to his injury appellee assisted in hauling iron, known as channel bars, upon certain small trucks from said point to appellant's blacksmith shop, which work was in all respects similar to the work in which he was engaged when injured. Appellee worked one-half day June 6, 1907, at the same work and in the same place at which he was injured on the following day, and the work which he was doing when injured was that for which he was hired by appellant; but appellee was not fairly familiar with the general situation of that part of appellant's plant known as Sixth street. Appellant owned and operated in the conduct of its business four small locomotive engines, known as pony engines, one of which was drawing the coal-car which occasioned the accident. The engine had no tender, but was provided with foot-boards, both in front and in the rear. About three minutes before appellee was injured said engine backed in from the three-throw switch, passed the point where appellee was at work, with engineer Clader in charge, and switchman George Romel standing on the rear foot-board and looking in the direction in which said engine was moving. Frank Taylor, another switchman, whose work was also in connection with said engine, walked from the three-throw switch to the coal-car, but did not follow the track past where appellee was at work. Herman Pietrowski, who was in appellant's employ and engaged in the same work as appellee, removed a truck from the track about ten feet east of where appellee was at work, and after said engine backed west placed the same between the truck at which appellee was at work and the truck which was caught by the coal-car, and but for this the jury do not know whether the injury would have occurred to appellee or not. Romel coupled the engine to a

coal-car which had been standing at the coal shed for two days, and Taylor released the brake upon said car. This car was not owned by appellant, but was delivered to it loaded with coal to be unloaded, and bore upon its sides the letters ''Montour R. R. Co.'' As this car moved east there was upon the north side and at the west end thereof a defective step or stirrup, which was bent out of proper position about four inches toward the north, but this step did not catch upon the handle of a truck near the track at a point west of where appellee was working. At and before the time of this accident appellant had in use 450 trucks, three of which, immediately preceding appellee's injury, were at the point where he was injured, but the jury say that there was no evidence showing how long they had been there, or who put them there. The engine drawing the coal-car moved east at the rate of three miles per hour, with the engineer in charge, Romel on the foot-board between the engine and the car, and Taylor upon the rear of the coal-car. At the time of the accident no iron was piled in Sixth street south of the track, and the most westerly pile on the north side of the track was four feet four inches therefrom and about twelve feet six inches high, the next pile was four feet two inches therefrom and ten inches high, the next pile eight feet eight inches therefrom and ten feet two inches high, the next two piles nine feet nine inches therefrom, and the next eight feet five inches therefrom. The spaces between the piles varied from six to eight inches, and the total distance from the west side of the most westerly pile to the east side of the most easterly pile was twenty-six feet seven inches. At the time of the accident appellee was engaged in loading iron on a truck from the pile nine feet nine inches from the railroad track, which pile was three feet long, seventeen and one-half inches wide, and four feet three inches high, the pile next east of appellee was four feet six inches high, and the next pile west of him three feet eight inches high. The truck with which appellee was at work was four feet eight inches

long, two feet ten inches wide, and two feet four and one-half inches high, and a truck of about similar dimensions, upon which the coal-car caught, stood parallel with the track between the pile of iron ten inches high and the track, and the truck placed by Pietrowski stood with its length about north and south. There was nothing at the place where appellee was working when injured to prevent him from see-ing the empty truck that was afterwards caught, had he looked. The truck with which appellee was working, and the other trucks in the vicinity thereof, were in no wise defective, and the place at which he was working when injured was in no wise dangerous, except from the presence of the empty truck near the railroad track. Some lookout is necessary other than a man preceding such engines on foot in moving about appellant's plant, and Romel or Taylor should have preceded the locomotive as it passed along the track going east at the time appellee was injured.

The second paragraph of complaint charged appellant with negligence in knowingly permitting an empty truck to remain in a position imperiling the safety of em-ployes. The jury expressly found that there was no evidence to show when or by whom the truck was placed in the position complained of, and hence there can be no support for a conclusion that appellant was guilty of the negligence charged in this paragraph, conceding that appellant was in duty bound to keep watch over such transitory conditions as the temporary position of an empty truck. *Connors* v. *Elmira, etc., R. Co.* (1895), 92 Hun 339, 36 N. Y. Supp. 926.

The first paragraph of complaint is drafted upon the theory that the injury was produced by the concurrent neg-ligence of appellant and a fellow servant of appellee's. The principle upon which this paragraph is founded is well settled, that if an employer is guilty of a neg-ligent breach of duty, which becomes a proximate cause of an injury to an employe, the employer is not exonerated from

liability for such injury because the negligence of a co-employe concurred in producing the injury. 3 Elliott, Railroads (2d ed.), §1306.

It is manifest that the primary act of negligence upon which this case must rest was the placing and leaving of an empty truck within dangerous proximity to the railway switch track. This was confessedly the act of a fellow servant, for which no recovery can be had without concurring negligence on the part of appellant. The vital question for our determination, therefore, is whether appellant is shown by answers to the interrogatories to be free from negligence which the law regards as a proximate or concurring cause of appellee's injury. The jury also found that the place in which appellee was working when injured was in no wise dangerous, except from the presence of the empty truck, about twenty feet distant and near to the railroad track, which appellee could have seen had he looked. The culpable act with which appellant is charged and sought to be bound is in failing to provide a fireman for the pony engine, to keep watch along the north side of the track and give warning of this obstruction. It is not alleged that a fireman was necessary to the proper and safe management of the engine, or that such an employe had ever been required or used in operating it, and was negligently permitted to be absent on this occasion, but the case is builded upon the theory that a fireman if present would have been stationed upon the left side of the engine cab as it went forward, keeping constant lookout for obstructions, and through his vigilance the accident might have been averted. It is insisted that appellee was set to work in an unsafe place.

6. The master's duty requires him to provide a reasonably safe place in which his servant is to work, and to exercise ordinary care to keep the same in reasonably safe condition. An employe assumes under his contract of employment, the ordinary risks of the business in which he engages, including the risk of injury from

competent fellow servants. The word "place" in negligence cases usually means the premises where the work is to be done, and does not comprehend the negligent acts of fellow servants by reason of which the place is rendered unsafe or dangerous. If the place in which a servant is set to work is not inherently dangerous, but necessarily or probably will become so in the orderly execution of the work assigned, no special supervision can be exacted of the master, but by attention to details of arrangement and execution the servant is required to guard such place against insecurity. It may be declared, as a general proposition, that a master who has furnished a reasonably safe place in which to work, and reasonably safe appliances to work with, cannot be held liable to a servant whose co-servant has by his negligence rendered such place unsafe, without the master's fault or knowledge. It is made apparent by the special findings in this case that the danger to which appellee was exposed, and of which he complains, was transitory, existing only upon the single occasion when his injury was sustained, and due to no permanent defect or want of safety in appellant's appliances, plant and works, or the manner in which they were intended to be, and were ordinarily, used. The absolute obligation resting upon a master to use due care to provide and maintain a safe place for his workmen does not extend to all the passing risks that may arise from short-lived causes. *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280; *Central R. Co.* v. *Keegan* (1895), 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; *Meehan* v. *Speirs Mfg. Co.* (1899), 172 Mass. 375, 52 N. E. 518; *Whittaker* v. *Bent* (1897), 167 Mass. 588, 46 N. E. 121; *McKinnon* v. *Norcross* (1889), 148 Mass. 533, 20 N. E. 183, 3 L. R. A. 320; *Baron* v. *Detroit, etc., Nav. Co.* (1892), 91 Mich. 585, 52 N. W. 22; *Hussey* v. *Coger* (1889), 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. 787.

The security of any place in which a number of co-laborers

are employed must depend to some degree upon the intelligence, care and fidelity of the several individuals so employed, and under such circumstances the master cannot be held responsible for an accident, the nature of which indicates that it must be attributed to the manner in which an appliance or tool was used or placed by one of such workmen. So in this case an empty truck—a harmless, safe and proper instrumentality—was, by the negligence of a fellow servant, so placed as to be converted into an injurious agency, and for such an act the master cannot be held culpable. *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460; *Fowler* v. *Chicago, etc., R. Co.* (1884), 61 Wis. 159, 21 N. W. 40; *Hogan* v. *Smith* (1891), 125 N. Y. 774, 26 N. E. 742; *Cregan* v. *Marston* (1891), 126 N. Y. 568, 27 N. E. 952, 22 Am. St. 854; *Worheide* v. *Missouri Car, etc., Co.* (1888), 32 Mo. App. 367; *McLaughlin* v. *Camden Iron Works* (1897), 60 N. J. L. 557, 38 Atl. 677; *Trcka* v. *Burlington, etc., R. Co.* (1896), 100 Iowa 205, 69 N. W. 422; *Cleveland, etc., R. Co.* v. *Brown* (1896), 73 Fed. 970, 20 C. C. A. 147; *McGee* v. *Boston Cordage Co.* (1885), 139 Mass. 445, 1 N. E. 745; *Potter* v. *New York, etc., R. Co.* (1892), 136 N. Y. 77, 32 N. E. 603; *Perry* v. *Rogers* (1898), 157 N. Y. 251, 51 N. E. 1021; *Ft. Wayne Iron, etc., Co.* v. *Parsell* (1907), 168 Ind. 223. Our conclusion is that appellant is not shown to have been under any duty to anticipate and employ special vigilance to discover such dangers as that which resulted in appellee's injury.

This opinion might be concluded here, but, in view of the importance of the case, we deem it proper to consider other phases of the question involved. If, in point of fact, the proper operation of this pony engine had required the assistance of a fireman, and one had been provided, it is manifestly problematical whether, at the critical moment preceding this occurrence, he would have been engaged in shoveling coal, or in some other incidental service, instead of scrutinizing implements under the care of

others, and mentally estimating their proximity to the rail-road track. The engine was equipped with a foot-board both in front and at the rear, which afforded a better point for observing encroaching obstacles than the cab of the engine. When the engine passed westward three minutes prior to the accident Romel stood upon the foot-board at the west, and looked in the direction toward which they were traveling, and as they returned three men were in charge of the engine and one car, occupying positions which ought to have given them proper oversight and control of the situation. This force was certainly adequate for the proper performance of the work in which they were engaged, and in such a manner as not to endanger the safety of men in the yards performing other duties, and in the exercise of due care. In our opinion it seems quite as probable that the dangerous position of the truck should have been detected by one of this crew as by a fireman at his post in the cab. In this connection the following language of the court in the case of *Hayes* v. *Western R. Corp.* (1849), 57 Mass. 270, 274, seems pertinent: "When it is established, that the injury complained of was occasioned by the neglect of the man on the train, and not by reason of the absence of the man, then surely the absence of the man becomes immaterial. The reasonings and calculations of the counsel, as to chances and probabilities, are skillful and ingenious, but chance and probability are too remote and contingent to be the basis of judicial decision in a case like this. The proximate cause is the object of inquiry, and when discovered, is to be regarded and relied on."

In speaking of the duty of the company to warn an employe at work upon the track, in the case of *Aerkfetz* v. *Humphreys* (1892), 145 U. S. 418, 420, 12 Sup. Ct. 835, 36 L. Ed. 758, Justice Brewer said: "The engine was moving slowly, so slowly that any ordinary attention on the part of the plaintiff to that which he knew was a part of the constant business of the yard would have made him aware of the ap-

proach of the cars, and enabled him to step one side as they moved along the track. It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employes who had all the time knowledge of what was to be expected. We see in the facts as disclosed no negligence on the part of the defendants, and if by any means negligence could be imputed to them, surely the plaintiff by his negligent inattention contributed directly to the injury.''

So in this case we may say with even better assurance that appellant was guilty of no negligence in failing to employ extraordinary precautions to discover and give notice of danger from this slowly-moving engine to men employed in the vicinity of the track, to whom no danger could have been reasonably apprehended. The finding of the jury that Romel or Taylor should have preceded the engine as it moved eastward was without the issues, and without influence upon the questions for decision.

It is a well-established principle that a party is not responsible in respect of mischief which could by no possibility have been foreseen, and which no reasonable person would have anticipated. Broom, Leg. Max. (8th Am. ed.), *386. In determining the question of liability in negligence cases, ''proximate cause'' is construed as a cause from which a man of ordinary experience and sagacity could foresee that the result might ensue. *Burlington, etc., R. Co. v. Budin* (1895), 6 Colo. App. 275, 40 Pac. 503; *Bellefontaine, etc., R. Co.* v. *Snyder* (1868), 18 Ohio St. 399, 98 Am. Dec. 175; *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132.

We quote the following from *Williams* v. *Delaware, etc., R. Co.* (1886), 39 Hun 430, 434, as illustrative of this principle: ''Where several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have hap-

pened, it may be attributed to all or any of the causes, but it cannot be attributed to a cause, unless without its operation the accident would not have happened. * * *
Within the principle of the cases cited, to entitle the plaintiff to recover upon the ground that the defendant was guilty of negligence in not furnishing a sufficient number of brakemen, it was incumbent on the plaintiff to show that his injury was the result of such negligence; that it was the natural and probable consequence of the defendant's omission, and that the accident would not have happened but for such omission." See, also, *Little Rock, etc., R. Co. v. Barry* (1898), 84 Fed. 944, 28 C. C. A. 644, 43 L. R. A. 349, 371; 1 Shearman & Redfield, Negligence (5th ed.), §26.

Applying the law as thus declared to the facts of this case, we are led to the conclusion that, if appellant can be said to have been negligent in not providing a fireman, such negligence was not a proximate cause of the accident by which appellee was injured. In the case of *Relyea* v. *Kansas City, etc., R. Co.* (1892), 112 Mo. 86, 20 S. W. 480, 18 L. R. A. 817, it was held that the proximate cause of the death of a fireman on a train which collided with cars belonging to another train, was the failure of a fellow servant to set the brakes on such cars and thereby prevent their running down a grade, and that a recovery could not be based on the negligence of the trainmaster in running the two trains too close together, where there was no proof that they were dangerously close if proper care had been used. The negligence of the master, to be actionable, must have been an immediate cause of the accident, and have had a share in producing the injury; and, if the negligence of a fellow-servant was the proximate and efficient cause of the injury, there can be no such concurring negligence as to impose liability upon the master. *New York, etc., R. Co.* v. *Perriguey* (1894), 138 Ind. 414.

When the facts are undisputed, what constitutes proximate and remote cause is a question of law for the court. *P. H. & F. M. Roots Co.* v. *Meeker, supra.* It is clear upon the facts found in this case that the act of a fellow servant in carelessly and negligently leaving the empty truck in such a position as to come in contact with a passing car was the efficient and proximate cause of appellee's injury. Appellant was not guilty of a breach of duty owing to appellee in failing to provide a fireman for its pony engine, and therefore was not negligent; and, if its omission in this respect be in any sense regarded as negligent, such negligence was not a proximate cause of the injury resulting to appellee. It follows that appellee cannot hold appellant responsible for resulting damages sustained. *Evansville, etc., R. Co.* v. *Tohill* (1895), 143 Ind. 49, 60; *Rush* v. *Coal Bluff Mining Co.* (1892), 131 Ind. 135, 141; *Spencer* v. *Ohio, etc., R. Co.* (1892), 130 Ind. 181; *Cincinnati, etc., R. Co.* v. *Lang* (1889), 118 Ind. 579, 586; *Sullivan* v. *Wamsutta Mills* (1892), 155 Mass. 200, 29 N. E. 516; *Cunningham* v. *Washington Mills Co.* (1891), (Mass.), 26 N. E. 235; *Mahoney* v. *Vacuum Oil Co.* (1894), 76 Hun 579, 28 N. Y. Supp. 196; *Corona* v. *Galveston, etc., R. Co.* (1891), (Tex.), 17 S. W. 384; *Rose* v. *Gulf, etc., R. Co.* (1891), (Tex.), 17 S. W. 789; *Vizelich* v. *Southern Pac. Co.* (1899), 126 Cal. 587, 59 Pac. 129; *Trewatha* v. *Buchanan Gold Mining, etc., Co.* (1892), 96 Cal. 494, 28 Pac. 571, 31 Pac. 561; *Gila Valley, etc., R. Co.* v. *Lyon* (1903), 8 Ariz. 118, 80 Pac. 337; *Knahtla* v. *Oregon Short Line, etc., R. Co.* (1891), 21 Ore. 136, 27 Pac. 91.

When the facts are undisputed, as in this case, and the right of the parties can be clearly seen and determined, it is the policy of the law to make an end to the litigation. Having reached the conclusion that further litigation must be fruitless, without separately considering the sufficiency of the complaint, we are of opinion that appellant's motion for judgment upon the answers of the jury to

interrogatories notwithstanding the general verdict, ought to have been sustained.

The judgment is reversed, with directions to sustain appellant's motion for judgment in its favor upon the answers of the jury to interrogatories.