CHICAGO AND ERIE RAILROAD COMPANY v. MITCHELL, ADMINSTRATOR.

[No. 22,999. Filed December 14, 1915. Rehearing denied March 17, 1916.]

1. MASTER AND SERVANT.—Assumption of Risk.—Fellow Servants.—Employer's Liability Act.—The common-law rule that a servant assumed the ordinary risks incident to his employment, including the risk of injury from the negligence of a competent fellow servant, has been abrogated so far as it applies to the risk of injury by a fellow servant, by the provisions of §8020a Burns 1914, Acts 1911 p. 145, §1, expressly imposing on one employing more than five persons liability for injuries to a servant through the negligence of a fellow servant. p. 591.

2. MASTER AND SERVANT.—Injuries to Servant.—Negligence of Fellow Servant.—Assumption of Risk.—Where the complaint avers, and the evidence shows, that the employer had in his service more than five persons, and that the injuries to the servant were sustained through the negligence of his fellow servants, the defense of assumption of risk of injury by a fellow servant is eliminated, under Acts 1911 p. 145, §1, §8020a Burns 1914. p. 591.

3. APPEAL.—Waiver of Error.—Briefs.—Error assigned on the overruling of a demurrer to the complaint is waived by appellant's failure to point out any defect therein in its brief. p. 593.

4. APPEAL.—Review.—Verdict.—Answers to Interrogatories.—Alleged error in the overruling of a motion for judgment on the jury's answers to interrogatories is unavailable where the answers present no irreconcilable conflict with the general verdict on any material issue. p. 593.

5. APPEAL.—Review.—Answers to Interrogatories.—Failure of Evidence to Support.—Appellant's assignment in its motion for a new

trial that the jury's answers to certain interrogatories were contrary to the undisputed evidence is of no avail in view of the fact that the judgment was on the general verdict, though a reversal may be had in cases where the answers as to a material issue which the appellee was bound to prove are unsupported by the evidence, upon the ground that the general verdict is not supported on such material issue.  p. 593.

6.   APPEAL.—*Waiver of Error.—Briefs.*—Alleged insufficiency of the evidence to support the general verdict is waived by failure to present the question in the points and authorities set out in appellant's brief.  p. 594.

7.   APPEAL.—*Questions Reviewable.—Evidence to Support Answers to Interrogatories.*—The court on appeal may consider the lack of evidence to support the jury's answers to interrogatories in a proper case.  p. 594.

8.   MASTER AND SERVANT.—*Railroads.—Injury to Car Repairer.— Care in Crossing Tracks.*—In an action for the death of a car repairer who, while attempting to cross a switch track located between the track on which he was engaged in repairing cars and defendant's repair house to procure materials for his work, was struck by a cut of cars being moved on such switch track, an instruction advising the jury that the rule requiring a traveler or other person about to cross a railroad to look in both directions and look and listen is not applied in all its strictness to workmen engaged in the line of their duty at work upon and about a railroad track was not erroneous.  p. 596.

9.   MASTER AND SERVANT.—*Railroads.—Injury to Car Repairer.— Instructions.—Evidence.*—In an action for the death of a car repairer who was struck by the movement of cars while he was attempting to cross the track to procure materials for his work, an instruction stating the duty owing to a workman required to cross a track in the course of his employment, and that if decedent was in the habit of crossing defendant's track in the course of his employment at or near the place where he was killed, and if defendant knew of such habit, it became the duty of defendant to exercise ordinary care to avoid injuring him, was not objectionable although there was no direct evidence of decedent's habits, in view of evidence in relation to the general habit of defendant's employes warranting a finding that decedent was in the habit of crossing the tracks as he did at the time of the accident, and that defendant had knowledge thereof.  p. 596.

10.   MASTER AND SERVANT.—*Railroads.—Injury to Car Repairer.— Instructions.—Evidence.*—Where a car repairer was killed while crossing defendant's track to procure materials for use in his work, an instruction stating that if there was a custom that the cars on such track were from time to time left open, so that men working in the repair yards of defendant could and did pass between said cars, and that the men, including decedent, were in the habit of using that

means of passing to and from their work in the yards, to defendant's bolt house, and the defendant knew that it was so used; and it was so used without objection from defendant, a finding would be authorized that such way was provided by defendant as alleged in the complaint, was not erroneously given, in view of some evidence on which to base the hypothesis found therein, although there was no evidence that defendant had ever established any express rule in relation to the use of a path constructed for the use of the employes, or in relation to their crossing the tracks elsewhere.   p. 597.

11.   MASTER AND SERVANT.—*Injuries to Servant.—Choice of Ways.— Instructions.*—An instruction seeking a direction of nonliability for the death of an employe, on the theory that he had not chosen a safe way provided by defendant, and which disregarded the element of knowledge on the part of the servant of the danger in the way chosen, was properly refused, regardless of the effect of §2 of the Employer's Liability Act (Acts 1911 p. 145, §8020b Burns 1914) eliminating the defense that the dangers or hazards inherent or apparent in the employment contributed to the injury, since the instruction was erroneous under the common-law rule, which precludes recovery only where the servant had actual or constructive knowledge of the danger.   p. 598.

12.   APPEAL.—*Review.—Refusal of Instructions.*—There was no error in the refusal of a requested instruction containing an hypothesis not supported by the evidence.   p. 599.

13.   MASTER AND SERVANT.—*Railroads.—Injury to Car Repairer.— Evidence of Custom.—Review.*—Where the complaint for the death of a car repairer, who was killed while attempting to cross a track to procure materials for his work, alleged a custom of defendant in placing cars, to leave an opening between the cars for the passage of employes and its use by the employes, the court did not err in permitting a witness to testify as to what way the men went in going from the cars on which they were working on the repair tracks to defendant's bolt house and lumber shed to procure materials.   p. 599.

From Superior Court of Allen County; *Howard L. Townsend*, Special Judge.

Action by Robert G. Mitchell, administrator of the estate of William A. Jones, deceased, against the Chicago and Erie Railroad Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.)   *Affirmed.*

*W. O. Johnson, W. M. Johnson, C. K. Lucas* and *Walter Olds*, for appellant.

*Bowers & Feightner*, for appellee.

MORRIS, C. J.—Action for death, involving the relation of master and servant,. under the rules of the common-law except as modified by the. act of March 2, 1911, known as the Employer's Liability Act. Acts 1911 p. 145, §§8020a-8020k Burns 1914. At common law the servant assumed the ordinary risks incident to his employment, which included the particular risk of injury from the negligence of a competent fellow servant. *Haskell & Barker Car Co.* v. *Przezdziankowski* (1908), 170 Ind. 1, 9, 10, 83 N. E. 626, 127 Am.. St. 352, 14 L. R. A. (N. S.) 972. Section 1 of said act (§8020a Burns 1914, *supra*) expressly makes an employer, with five or more. persons employed, liable to an employe for negligent injury by a fellow servant. The effect of this section is to abrogate the assumed risk rule in so far as it applies to the particular risk of injury by a fellow servant. *Vandalia R. Co.* v. *Stillwell* (1914), 181 Ind. 267, 270, 104 N. E. 289; *Chicago, etc., R. Co.* v. *Mitchell* (1916), *ante* 383, 110 N. E. 215; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 449, 450, 78 N. E. 1033.

Sections 2 and 3 of the act of 1911 (§§8020b, 8020c Burns 1914, *supra*), further restrict the application of the common-law doctrine of assumed risk and that of contributory negligence, but such restrictions are not presented here for consideration. The complaint avers, and the evidence shows, that appellant, the employer, had in its service more than five persons, and that the decedent's fatal injury resulted from the negligence of his fellow servants. Under such facts, section 1 of the statute eliminates the common-law defense of assumption of risk of injury by a fellow servant.

The complaint, among other things, alleges that on and previous to July 22, 1911,. appellant maintained on its grounds, at Huntington, ten tracks, running

north and south, which were used for placing and holding freight cars for repair work thereon. These tracks were numbered, and number one was the west track. Immediately west of said track number one there was located another one called a supply track, used by appellant to haul in carloads of lumber, bolts, nails, etc., and to haul out cars loaded with car wheels. This supply track was always occupied to some extent by cars loaded with materials of the character above mentioned. Immediately west of the supply track, and parallel therewith, appellant had a long building, holding lumber for car repairs, and immediately south of this building, four feet from and parallel with the supply track appellant had another house containing bolts, nuts, nails and other supplies for car repairs. On July 22, 1911, appellee's decedent was in appellant's employ as a car repairer and was then engaged in repairing a car located at a point on track number four, east of the supply track and to the south of the bolt house. At that time appellant had placed on the supply track, immediately south of the bolt house, two freight cars, not coupled, with a space of four feet between them. Decedent in his repair work, needed some bolts, and started from his place of work to the bolt house to get them, and attempted to pass between the cars on his way, but in so doing was crushed to death by appellant violently pushing an engine and string of cars against the said north car on the supply track causing it to come in violent contact with the other one, while decedent was between them. It is further alleged that the route taken by decedent was the shortest and most practical one from the car being repaired to the bolt house, and that the four feet of open space between the two cars was provided by appellant for the purpose of giving the car repairers a short route to the

bolt house; that before attempting to pass between the cars decedent looked and listened for the approach of cars but did not see or hear any and could not have seen or heard, and did not know of, the approach thereof; that appellant gave no signal nor warning of the approach of the string of cars, and knew that the open space was left for the aforesaid purpose, and that open spaces of such character on the supply track were used by its employes. as passage ways to the bolt house.

Appellant filed a demurrer to the complaint and its overruling is assigned as error, but it has failed, in its brief, to point out any defect therein, and has therefore waived a consideration of its sufficiency. There was a trial by jury, with answers to interrogatories, and a general verdict for appellee. Appellant's motions for judgment on answers to interrogatories and for a new trial, were each overruled. It is claimed that the trial court erred in overruling the motion for judgment. There were fifty-five interrogatories submitted to the jury for answer. While it is stated in the brief, in general terms that there is irreconcilable conflict between the general verdict and the answers, it may well be doubted if any conflict is suggested by such particular designation as entitles appellant to a consideration of the error assigned. We have, however, examined the answers, but perceive no irreconcilable conflict on any material issue.

Appellant's fourteenth reason assigned in its motion for a new trial was as follows: "The answers to the following special interrogatories propounded to the jury and the answers of said jury to each of said interrogatories separately, are contrary to the undisputed evidence in said cause: fifteen (15), seventeen (17), eighteen (18)

and fifty-five (55)." It contends here that the trial court erred in overruling the motion, because as claimed, a consideration of the evidence discloses a total lack of support for the answers to the four questions. Were the claim conceded, we preceive no reason why such fact is material, nor has any reason or authority therefor been suggested or cited in appellant's brief. The judgment here was on the general verdict, not on the answers. *Vandalia Coal Co.* v. *Price* (1912), 178 Ind. 546, 549, 97 N. E. 429. If the answers found, in favor of appellee, facts covering a material issue which appellee was bound to prove, and which had no support in the evidence, a logical situation would be presented where appellant would be entitled by proper procedure, to a reversal of the judgment, because, in such case the general verdict, on a material issue, would have no support. But such relief would be granted for such reason, if presented, and not because the answers fail of such support. This motion for a new trial does assign, as grounds therefor, the insufficiency of the evidence to support the general verdict, but such question is not presented in the points and authorities set out in the brief, and is therefore waived. There are instances where this court may consider the lack of evidence to support answers to interrogatories but no such situation here appears. *Barr* v. *Sumner* (1915), 183 Ind. 402, 107 N. E. 675, 109 N. E. 193. The evidence shows that on a line running east and west between the bolt and lumber buildings there was constructed a path about eight feet wide across the supply and repair tracks. This was made of boards, in the spaces between the tracks—about ten feet—and, between the rails of the tracks, it was constructed of cinders. The cinders and boards were practically level with the tops of the rails.

On the west side of the supply track was a wooden walk extending north and south, in front of the supply buildings, and several hundred feet south thereof and intersecting said east and west path. Workmen used this path and walk, in going to and from the supply houses, and for transporting on trucks heavy materials to and from the cars being repaired. The east and west path was always kept open except when cars were being placed for repairs or removed from the repair tracks. The entrance to the bolt house was at the south end thereof, and about fifty feet south of the east and west path. The decedent immediately before the accident was working on a car on track four, at a point about 200 feet south of the east and west path. The repair tracks ran north and south where intersected by the path, but north thereof they curved to the northwest, and were further on united to the main track. Jones was killed at a point about seventy-five feet south of the bolt house. There was evidence that long before the date of the accident it was the habit of workmen employed in repairing cars to go to the bolt house to get light supplies which they could carry in their arms, and in doing so to take the shortest route regardless of the east and west path. At the time the decedent was working at piece work. G. C. Brown, appellant's foreman of switch engine that backed the cars which caused Jones' death, testified that he knew the employes were in the habit of crossing the supply track between cars to go to the bolt house, but on this occasion there was no sentry on the east side of the supply track while the engine and cut of cars were being backed to the south. The foreman walked along the west side of the track as the engine and cut of cars progressed southward. Evidence was given on behalf of appellee that when cars were set on the supply track a

space was always left between them, through which the employes passed to and from the supply buildings.

Instruction No. 2, given by the court, was as follows: "The rule which exacts of a traveller or other person about to cross a railroad track the caution to look in both directions and also to listen, in order to ascertain, if a train is approaching, is not applied, in all its strictness, to workmen engaged in the line of their duty at work upon and about a railroad track." Appellant contends that this instruction was erroneous, because Jones, when injured, was not working on and about the track—that immediately before the injury he had nothing to engage his attention and he was bound to watch for an approaching train with such measure of care as is imposed on one not an employe. We are of the opinion that the instruction was not erroneous. *Cleveland, etc., R. Co. v. Lynn* (1912), 177 Ind. 311, 329, 95 N. E. 577, 98 N. E. 67; *Pittsburgh, etc., R. Co. v. Lightheiser, supra.*

Instruction No. 7, given by the court, reads as follows: "It is the law that where a person is working on or about a railroad track, and such workman is required to cross said track in the course of his employment, the company owes said workman the duty of exercising reasonable care and precaution to avoid injuring said workman. In this case, if you find from the evidence that plaintiff's decedent was in the habit of crossing defendant's track in the course of his employment at or near the place where said decedent was killed, and defendant knew that decedent was in the habit of crossing said track at said place, then it was the duty of defendant to exercise ordinary care and caution to avoid injuring said decedent." Objec-

tion is made to this instruction because, as claimed, there is no evidence to show that Jones was in the habit of crossing the tracks except on the path, nor is there evidence that appellant had any knowledge of such habit, even if it existed. While there is no direct evidence of Jones' particular habits in crossing the tracks, there is abundant evidence in relation to the general habit of the employes, and the jury was warranted in finding that prior to the accident decedent was in the habit of crossing the tracks as he did, and that appellant, through its agents, had knowledge thereof.

Instruction No. 10, given by the court, was in this language: "If you find from the evidence that there was a custom, that the cars on the track, called the supply track, were from time to time left open, so that the men working in the repair yards of the defendant company, could and did pass between said cars to and from the bolt house, and that the men so working in said yard, including the plaintiff's decedent were in the habit of using that means of passing to and from their work in the yards to the bolt house, and the defendant company, its agents and servants knew that the same was so being used, by the men, and it was so used, without objections from the defendant company, then this would authorize you to find that it was provided by the company, as alleged in the complaint." The instruction is vigorously assailed on the theory that there is no evidence to support it. We are of the contrary opinion. Facts alleged may be established by circumstantial as well as by direct evidence. There was here no evidence that appellant had ever established any express rule relating to the use of the path by employes, or in relation to crossing the tracks elsewhere. There was some evidence on which to base the hypotheses found in

the instruction, and there was no error in its giving. Complaint is made of other instructions given but we perceive no error in any one assailed.

The court refused to give instruction No. 8 requested by appellant, and reading thus: "If the jury believe from the evidence that the defendant provided a safe way for its employes engaged upon repairing cars, to go to the bolt house for bolts or other materials needed in the work in which they were engaged it had a right to assume that in going to the bolt house, he would take the safe route provided for him and if he voluntarily took a more hazardous route and was thereby injured, there can be no recovery and the verdict must be for the defendant." Appellant claims that this refusal was clearly erroneous. It is a common-law rule, of general recognition, that where two ways are open to a servant for the performance of a duty, one known by him, actually or constructively, to be dangerous and the other safe, and thereupon he voluntarily chooses the former, and is injured, he can not recover. Whether this rule is referable to the doctrine of assumed risk or that of contributory negligence presents a question on which there is a conflict of authority. *Jenney Electric Mfg. Co.* v. *Flannery* (1913), 53 Ind. App. 397, 98 N. E. 424. If the danger here was one inherent or apparent in the employment it might be appropriate to consider the question of the application of so much of §2, *supra*, of said Employer's Liability Act of March 2, 1911, as reads as follows: "In actions brought against any employer * * * it shall not be a defense that the dangers or hazards inherent or apparent in the employment in which such injured employe was engaged, contributed to such injury." However, the application of the statute is not discussed in the

brief of either party; and in view of the conclusion reached, we do not consider the question. The instruction is erroneous under the common-law rule. It will be noted that it seeks a direction of nonliability, regardless of the element of knowledge, actual or constructive, on the part of the servant, of the danger in the way chosen. It is only where the servant has actual or constructive knowledge of the danger that recovery is precluded. 26 Cyc 1196, 1236.

Complaint is made of the court's refusal to give appellant's requested instruction No. 12. There was no error. It involved the hypothesis that appellant furnished a person to carry all needed supplies from the bolt house to the repairers. There were, at the time, about seventy-five men engaged in repair work. The most the jury could have rationally inferred from the evidence was that some supplies were delivered to the workmen by other employes. The hypothesis was not supported by sufficient evidence. It is contended that error appears in the refusal to give other instructions requested. We have considered them but find no basis for the predication of reversible error on such refusal.

Lavender Thompson, a car carpenter in appellant's repair yards since 1904, testified for appellee, and on direct examination was asked the following question: "You may state Mr. Thompson, what way the men went in going from the cars on which they were working on these repair tracks to the bolt house and lumber shed when the material they wanted to get from one of these houses was such that they could carry it and didn't have to wheel around?" Appellant objected to the question because it related wholly to what other employes had done, and not to what the decedent did; that it did not relate to the time of the

accident; that appellant is not bound by the acts of third parties. The complaint alleges a custom, in placing the cars, of leaving an opening for the passage of employes, and a usage by the employes of such spaces as passage ways. There was no error in the court's ruling. *Lupton* v. *Nichols* (1902), 28 Ind. App. 539, 63 N. E. 477; *Cleveland, etc., R. Co.* v. *Bergschicker* (1904), 162 Ind. 108, 69 N. E. 1000; *Conner* v. *Citizens St. R. Co.* (1896), 146 Ind. 430, 45 N. E. 662; *Pickett* v. *Central, etc., R. Co.* (1912), Ann. Cas. 1913 C 1383, note; 12 Cyc 1079.

Appellant presents other questions in relation to the admission and exclusion of evidence, but we are satisfied that the trial court committed no error in relation to any such matter of which appellant complains. The record discloses no reversible error. Judgment affirmed.

Erwin, J., not participating.

NOTE.—Reported in 110 N. E. 680. As to acceptance of employment by servant when appreciating its dangers, see 97 Am. St. 893. As to the duty of a railroad employe crossing tracks to look out for approaching trains, see 11 Ann. Cas. 211. As to who are employes within meaning of statute abrogating fellow-servant doctrine as to employes of railroads, see 11 Ann. Cas. 924; 17 Ann. Cas. 514. See, also, under (1) 26 Cyc 1182; (3) 4 C. J. 1075; 3 Cyc 388; (4, 5) 38 Cyc 1924; (6) 4 C. J. 1074; 3 Cyc 388; (7) 4 C. J. 856; 3 Cyc 351; (9) 26 Cyc 1494; (10) 26 Cyc 1497; (11) 26 Cyc 1196, 1258; (12) 38 Cyc 1617; (13) 26 Cyc 1433, 1441.